COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


JAMES P. HART, III

v.   Record No. 1574-00-3

MARIE HOLT HART (NOW PRATT)                OPINION BY
                                  JUDGE ROSEMARIE ANNUNZIATA
MARIE HOLT HART (NOW PRATT)               APRIL 3, 2001

v.   Record No. 1603-00-3

JAMES P. HART, III


            FROM THE CIRCUIT COURT OF ROANOKE COUNTY
              Lawrence D. Diehl, Judge Pro Tempore

        Melissa W. Friedman (Charles B. Phillips;
        Phillips, Swanson & Phillips, on briefs), for
        James P. Hart, III.

        William H. Cleaveland (Leisa Kube Ciaffone;
        Rider, Thomas, Cleaveland, Ferris & Eakin;
        Gentry, Locke, Rakes & Moore, on briefs), for
        Marie Holt Hart (now Pratt).


     This divorce action is before us for the second time.

Previously, in Hart v. Hart, 27 Va. App. 46, 497 S.E.2d 496

(1998), we reversed four rulings made by the Roanoke County

Circuit Court and remanded the case for further proceedings

consistent with our ruling.

     On this second appeal, James P. Hart, III (husband) and

Marie Holt Hart (now Marie Holt Pratt) (wife) separately appeal

several of the trial court's rulings on remand.  The husband

alleges that, on remand, the trial court erred: (1) in modifying the easement over husband's partitioned parcel, which the trial court granted in the original divorce decree; (2) in determining the value of husband's separate property contributions made to the parties' New York property and in failing to properly recalculate husband's interest in the parties' USAA Bond Fund account, which contained proceeds from the New York mortgage note; (3) in computing the increase in value of wife's contribution of her separate property to the parties' USAA Bond Fund account; and (4) in ruling that a portion of the parties' jointly owned real estate, "Parcel A," must be placed on the real estate market for sale at fair market value.

Wife cross-appeals, alleging the court erred: (1) in allowing the husband to introduce additional evidence of his contributions of separate property to the parties' New York property and in failing to properly recalculate each party's portion of the USAA Bond Fund account; and (2) in finding that wife had not properly exercised her option to purchase Parcel A.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

The parties were married in New York in 1968 and lived in a home that husband had purchased before the marriage for $27,000.

In 1986, they sold the New York home for $259,000, receiving a part payment of $40,000 and a $219,000 twenty-year promissory mortgage note. After selling the New York home, the parties opened a USAA Bond Fund account using the $40,000 down payment they received for the New York home as the initial deposit. Over the years, money from various sources was deposited into the account, including the New York mortgage note payments and $20,500 that wife inherited from a relative.

The parties moved to Virginia, where they purchased a forty-two acre parcel of land, called Plantation Point, which is located on Smith Mountain Lake. At Plantation Point, they built a home for themselves, eight rental units, and a home for wife's parents.

The parties separated on February 4, 1994, and husband filed for divorce in October, 1994. The trial court appointed a commissioner in chancery to hear evidence and make recommendations regarding equitable distribution of the parties' property. The trial court issued a final divorce decree and approved the commissioner's equitable distribution recommendations with some modifications.

Both parties appealed the final decree. On appeal, we reversed four of the trial court's rulings, three of which are relevant to this appeal.

In the final decree, the trial court divided the Plantation Point property into three parcels. The court awarded the

husband the marital home and four of the eight rental units, and awarded the wife the home that had been built for her parents and the remaining four rental units. A third parcel, "Parcel A," was to remain titled to both parties as tenants in common. The final decree gave husband first option to purchase wife's interest in Parcel A. Husband had sixty days from the entry of the final decree within which to exercise the option. If husband failed to exercise the option, wife was given sixty days to purchase husband's interest in Parcel A. If neither party exercised their option within the respective option periods, the final decree provided that "the property shall be placed on the market with an agreeable realtor at a fair market value and sold, and the parties shall divide the net proceeds from the sale equally."

In the final decree, the trial court established easements on each party's tract for ingress and egress. The easement over husband's tract granted the wife ingress and egress rights to a boat ramp on Smith Mountain Lake. The court ruled that the cost of maintaining each of the two easements "shall be the sole responsibility of the respective owners" of the tracts across which the easements run. We reversed this ruling, finding that because both parties and their tenants would use the two easements, the costs of maintaining and repairing the easements must be apportioned between the parties. We remanded the case to the trial court to "redetermine the parties' responsibilities

for the maintenance costs of the joint easements in accordance with our holding."

The trial court also divided the parties' interests in the mortgage note from the New York home. Because husband had purchased the home before the parties married, the court classified the note as hybrid property. The court concluded that in addition to making a $2,700 down payment on the home, husband had made pre-marital mortgage payments in the amount of $3,565 and had made improvements to the home prior to the marriage at a cost of $10,000. The court further found that the parties contributed $17,335 of marital property to the post-marital mortgage payments. Based on these figures, the court determined that the New York property and, thus, the balance of the mortgage note, was 48.4% husband's property and 51.6% marital property.

We reversed the calculation, finding that the trial court erred in including the cost of the improvements made by husband, rather than the value those improvements added to the property. We directed that "on remand, the chancellor shall determine the husband's separate interest based on the value added by the improvements rather than their cost."

In the final divorce decree, the court divided the parties' interest in the USAA Bond Fund account. During the marriage, wife inherited $20,500, which was deposited into the account. The trial court ruled that the inheritance had been commingled

with marital property to the extent that it was no longer separate property. We reversed this ruling and held that the inheritance money was wife's separate property. On remand, we directed the trial court to reclassify the USAA Bond Fund account, taking into account wife's separate contribution of the inheritance proceeds as well the correct percentage of husband's separate property interest in the New York mortgage note.

On January 15, 1999, the trial court held an evidentiary hearing on the remanded issues. In addition, by agreement of the parties, the court heard evidence concerning the purchase of Parcel A that arose subsequent to the first appeal. The court entered an order resolving the issues on November 16, 1999, and these appeals followed.

## ANALYSIS

## I.

### Easement

Husband alleges the trial court, on remand, exceeded its authority in amending the definition of the easement over husband's property. We agree.

Following the first appeal, we remanded the case to the trial court to reallocate the parties' responsibilities for maintenance costs for the two easements. On remand, the trial court ordered the parties to divide the costs equally. After ruling on this matter, the court stated, "[i]n addition to the ruling of the court on the specific remand issue, the court has

been requested to clarify the extent, width or other parameters of the easements . . . ."  The court then established detailed specifications for the easements.  We hold that the court erred in doing so.

In the final decree, the court granted each party an easement over the other party's parcel "[i]n order to permit access of the parties to their residences, and for the tenants . . . ."  The easement in question over husband's property was described as follows:

> [Wife] and her tenants shall have the joint
> use of Trah Drive for ingress and egress
> over such portions of such roadway contained
> on Parcel C [husband's property] . . .
> including access from Blackwood Road to the
> Southern part of such road and the branch
> extending from said road to the existing
> boat ramp . . . .

Neither party appealed the grant of the easements or the description provided by the trial court.

On remand, the trial court supplemented its description of the easement.[1]  The court referred to the original report of the

---

[1] On remand, the trial court ordered the following:

> The specifications of the easements shall be
> as follows:
> (1) Based upon the testimony of the parties,
> it is the opinion of the court that the
> easement of ingress and egress for all joint
> use easements affecting the property of each
> party should be no less than a width of
> FIFTEEN (15) feet.  This will permit the
> passage of two vehicles in opposite
> directions and the towing of reasonably
> sized boats on trailers.

(2)  At the bottom of Trah Drive at the boat ramp spur, the easement should be expanded to a width of not less than FORTY-FIVE (45) feet or at such width as determined by the parties, as will enable a vehicle towing a boat trailer to turn around.  The ability of such a vehicle to turn around after dropping off a boat was certainly implied and was the intent of the court since it would be unreasonable to assume that Mr. Hart would require a vehicle to drive backwards with an attached trailer along the entire length of the road after dropping off the boat at the ramp location.  The court assumes that the parties can determine the parameters of the location of such an easement for such purposes in the final easement to be drafted herein.  The ingress and egress shall be to and include access to the boat ramp itself sufficient to place a boat into the water of the lake from such ramp and shall be up to the 800 foot contour line of the property owned by Mr. Hart, or such expanded ownership beyond said line if owned by Mr. Hart and if necessary to permit access of boats into the water at the ramp location. . . .

(3)  The easement at the area near the boat ramp location should also be of sufficient size to permit the parallel parking of only the vehicles used for towing and trailers for the applicable boat along the side of the access easement during the use of such boat so as to avoid the requirement that a user would have to drive the vehicle and trailer all the way back to their rental unit and then walk back down to the boat. Any such proposal that such a vehicle and trailer cannot be kept near the boat ramp during the use of the boat would, in effect, defeat the reasonable effectuation of an ingress and egress easement and use of the boat ramp as originally contemplated by the commissioner and court.  In common experience, where one uses a boat ramp in a reasonable manner, that includes within the parameters of a reasonable easement access, the ability to park within a near proximity

commissioner, which was approved by the trial court and incorporated into the final divorce decree. The commissioner's report provided "a specific access (ingress and egress) easement for boats and recreational access from the bottom of the tract Parcel B across Parcel C to the waterfront with sufficient width to permit reasonable boating access to the boat ramp . . . ."

Because wife did not appeal the easement granted in the final divorce decree, husband objected to the court's "clarification" of the easement, arguing that the divorce decree was a final order, which after twenty-one days, could not be modified by the trial court. Rule 1:1. The court held that its "clarification" of the terms of easement did not constitute an impermissible modification of its original order and that even

to the ramp after placing the boat in the water. Any other interpretation would defy common sense. Such a reasonable easement and use shall be included in the easement to be awarded to Mrs. Pratt for such boat ramp access. Based upon the testimony of Mrs. Pratt, the length of said parallel parking easement shall be at least 300 feet from the boat ramp up Trah Drive in order to accommodate a sufficient number of vehicles and boat trailers. Pursuant to the parties agreement and testimony, and while the court understands that Mr. Hart does not agree to this ruling, the said parking easement shall be located on the west side of the access road easement. The width shall be an additional TEN (10) feet to the west of the general access road easement in order to accommodate the width of the vehicle and trailer and sufficient parking placement so as to avoid any technical interference with Mr. Hart's land.

after twenty-one days "[t]he court has the power to clarify its orders where there are clerical errors or omissions pursuant to Va. Code Section 8.01-428(B)."

As the trial court acknowledged, under Rule 1:1, twenty-one days after a court issues a final order, the court loses jurisdiction over the case and cannot thereafter modify, suspend, or vacate its final order.  Code § 8.01-428(B) provides:  "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time . . . ."  We find that the "clarification" made in this case does not constitute a clerical mistake or error as contemplated by Code § 8.01-428(B).  Such mistakes or omissions must be apparent from the record.  Cass v. Lassiter, 2 Va. App. 273, 277, 343 S.E.2d 470, 473 (1986) ("Code § 8.01-428(B) confers upon a court the power to correct . . . clerical mistakes in judgments which arise from oversight or inadvertent omission.  However, to invoke such authority the evidence must clearly support the conclusion that an error of oversight or inadvertence has been made.").  In this case, however, the court heard new evidence on the matter and elaborated on its original decree.

We likewise find that the court lacked authority to modify its award under Code § 20-107.3(K)(4).[2] The clear language of that statute limits the court's authority to modification of awards dealing with pensions or retirement benefits.

Finally, we find that the court's "clarification" of the easement definition impermissibly exceeded the scope of its remand jurisdiction. Searles' Adm'r v. Gordon's Adm'r, 156 Va. 289, 294-99, 157 S.E. 759, 761-62 (1931); Krise v. Ryan, 90 Va. 711, 712-13, 19 S.E. 783, 783-84 (1894); Kaufman v. Kaufman, 12 Va. App. 1200, 1207-10, 409 S.E.2d 1, 5-7 (1991). Wife never appealed the grant of the easement or its scope; therefore, we did not consider that issue on appeal. We remanded the easement issue for the explicit purpose of reallocating the parties' responsibilities for the maintenance costs of the easements. "Clarification" of the scope of the easement was not necessary to the maintenance issue, nor did the court clarify the

---

[2] Code § 20-107.3(K)(4) provides:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section [giving the court authority to decree as to the property of the parties], including the authority to . . . [m]odify any order entered in a case . . . intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to the United States Internal Revenue Code or other applicable federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its

definition for that purpose.  Indeed, the court in its order indicated that the issues were independent and that it was considering the easement scope issue "in addition" to the "specific remand issue."

Wife had twenty-one days to seek "clarification" or modification of the easement scope or to appeal the court's final order on that issue.  However, wife failed to do so; therefore, the order became final, and the trial court lacked jurisdiction to alter the easement definition.

## II.

### Improvements to the New York Property

Husband alleges the trial court erred in valuing the pre-marital improvements husband made to the parties' New York home.  Wife alleges the court was correct in its valuation, but that it erred in allowing the husband to introduce evidence, on remand, of additional pre-marital improvements he made to the home.  We agree that the court erred in allowing the husband to introduce evidence of additional improvements.

During the original divorce proceeding, the husband testified to improvements he had made to the New York home prior to his marriage to wife.  Specifically, husband testified that he had installed carpeting in the home and a pool on the lot, at a cost of $10,000.

---

terms so as to effectuate the expressed
intent of the order.

On the first appeal, we held the trial court erred in using the cost, rather than the value, of the improvements husband made to the New York property in determining what portion of the mortgage note was his separate property. We ordered the court, on remand, to "determine the husband's separate interest based on the value added by the improvements rather than their cost."

On remand, over wife's objection, the court heard new evidence concerning the pre-marital improvements husband had made to the New York home. Both husband and his first wife, with whom he originally purchased the New York home, testified concerning the improvements husband made to the home prior to his marriage to wife. Although during the original divorce proceeding the husband testified only to the cost of installing the carpeting and the pool, on remand, he and his first wife testified to various other improvements that they had made, such as landscaping, repairing the barn, completing the ceiling in the home, and installing sheet rock.

In order to establish the value added to the home by the improvements, husband introduced evidence of an increase in the state tax assessment of the property from the time he purchased the home until the time he married wife. The court found that based on the assessment figures alone, the house increased in value over $20,000 prior to husband's marriage to wife.

However, the court discounted the increase in value to $10,000 because "some of the improvements were completed after

the new assessment was placed on the property" and "many of such items were not capital improvements, but were more in the nature of general repairs and maintenance for which no increase in value can be attributable."  The court also found that the tax assessment value husband presented at the remand hearing exceeded the value of the home he testified to during the original divorce proceeding.  Based on his original testimony, the house only increased in value by $10,000 prior to his marriage to wife.  The court, therefore, held that husband was limited to his testimony during the first trial as to the overall increase in value of the home.

   We agree with wife that the court erred in admitting evidence of additional improvements husband made to the home. The scope of remand was limited to determining the value the carpeting and the pool added to the home; therefore, evidence of further improvements was beyond the scope of remand.  Newton v. Newton, 202 Va. 96, 100-01, 116 S.E.2d 94, 97 (1960); Krise, 90 Va. at 712-12, 19 S.E. at 783-84.  Although the court did not find the property had increased in value to the full extent of the tax assessment increase, and although the court stated that it was not premising its decision on the repair and maintenance improvements that were made, it is not clear from the court's order whether it excluded from its determination of the increase in value in husband's property the improperly admitted evidence and whether it limited its consideration to the increase in

value which the carpeting and pool added to the property.
Therefore, we remand on this issue and direct the trial court to
determine the value added to the home by the installation of the
carpeting and the pool alone.  Because a portion of the proceeds
from the sale of the New York home, specifically the mortgage
note, was deposited into the USAA Bond Fund account, we also
order the trial court, following its recalculation of husband's
separate property share of the mortgage note, to determine the
parties' proportionate shares of the USAA Bond Fund account.

III.

Appreciation of Inheritance Property

During the first appeal, we held the trial court erred in
not classifying as separate property the $20,500 wife had
inherited from a relative.  In accordance with our ruling, on
remand, the court reclassified the inheritance money as wife's
separate property.  During their marriage, wife had deposited
the inheritance money into the parties' joint USAA Bond Fund
account.  On remand, wife argued she should also receive the
passive growth of her inherited share in this account.  The
trial court awarded her a proportionate share of the overall
growth of the account from the time she deposited the
inheritance money until the account funds were distributed to
the parties.  Husband argues the court erred in granting wife
this increase because she failed to establish a proper method of

determining the growth amount attributable to the inheritance money.  We disagree.

A party is entitled to the passive growth of their separate property where the party can provide sufficient proof of such increase.  Moran v. Moran, 29 Va. App. 408, 415, 512 S.E.2d 834, 837 (1999); Mann v. Mann, 22 Va. App. 459, 465, 470 S.E.2d 605, 608 (1996).  In this case, the court found that the wife had proven the date when she deposited the inheritance money and that she had made no withdrawal from the account after the deposit.  Based on the evidence, the court was also able to determine the increase in value of the account over the relevant time period and the wife's proportionate share of that growth in value.  Based on the evidence and the court's calculations, we find the trial court did not abuse its discretion in finding that wife had proven the value of the passive growth of her separate property and in awarding her the appropriate amount.

V.

Parcel A

In the final divorce decree, the court divided the Plantation Point property into three parcels, granting Parcel B to wife and Parcel C to husband.  The parties were to hold Parcel A as tenants in common.  Husband had sixty days from the entry of the final divorce decree to "exercise his option" to purchase wife's share of Parcel A for $7,500 per acre.  If husband did not exercise his option, then wife had "sixty days

in which to purchase" husband's interest in Parcel A.  If wife

failed "to exercise her option to purchase" husband's interest,

the court ordered that the property was to be sold at fair

market value.  Wife claims the trial court erred in finding that

she failed to properly exercise her option to purchase Parcel A.

We agree.

The final decree was entered on March 21, 1997.  Husband

did not exercise his option within the initial sixty-day period.

Wife's attorney sent a letter to husband's attorney on June 26,

1997 stating:

> Please accept this letter as notice that the
> Defendant, Marie Holt Hart, hereby exercises
> her option to purchase the Complainant's 50%
> interest in parcel A, at $7,500.00 per acre,
> pursuant to the Final Decree . . . .
> Mrs. Hart will tender the appropriate cash
> on or before July 18th, 1997 in exchange for
> Mr. Hart's endorsement on the appropriately
> drafted Deed.

Husband did not respond to this letter and on July 3, 1997,

wife's attorney sent another letter stating:  "I am writing this

letter as a follow-up to my previous letter notifying you of

Marie Hart's intention to purchase the acreage of Parcel A,

pursuant to the Final Decree."  Wife enclosed a check for

$2,836.80, and explained in the letter that she was deducting

from the Parcel A purchase price various amounts husband

allegedly owed wife.

The trial court found that, although wife had

"articulat[ed] an intent to exercise the option" in a timely

manner, by not tendering the full purchase price in her second letter, she had made a counter offer to husband, rather than exercised the option. Further, the court found that the final decree required the wife to complete the purchase within the sixty-day period. We disagree with the trial court's ruling.

The issue presented here has not been previously addressed by this Court or the Supreme Court of Virginia. However, the applicable principles are well-rooted in recognized principles of contract law. An "option" is merely a "continuing offer to sell, irrevocable during the option period." J.R. Kemper, Necessity for Payment or Tender of Purchase Money Within Option Period in Order to Exercise Option in Absence of Specific Time Requirement for Payment, 71 A.L.R.3d 1201 § 2 (1976 & Supp. 2000). Once the optionee "exercises" the option, or accepts the offer, the option is converted into a bilateral contract of purchase and sale. Am. Jur. 2d Vendor and Purchaser § 56 (2000). "The acceptance of an option to purchase realty must be absolute and unconditional, in accordance with the offer made, and without modification or the imposition of new terms in order to constitute a valid exercise of the option . . . ." Id. § 49. The language of the option determines the method of required acceptance. Although the parties can require tender of payment as the method of exercising the option, unless the parties specify such a requirement, tender is not necessary in order to exercise the option.

> [W]here an option contract does not provide
> for payment of the purchase price at the
> time of, or coincident with, an optionee's
> exercise or attempted exercise of the
> option, or where such contract is silent as
> to the time of payment, the courts have
> usually adhered to the view, sometimes
> referred to as the general rule, that in
> such circumstances payment is not a
> necessary requisite to exercise but is
> instead simply one of the acts required of
> the optionee in performance of his part of
> the bilateral contract of purchase and sale
> which was formed when he communicated to the
> optionor his election or intention to
> exercise the option and thereby accepted the
> optionee's offer.

71 A.L.R.3d 1201 § 2 (1976); see also Am. Jur. 2d Vendor and Purchaser § 48, § 53.

The general rule that unless expressly stated otherwise, tender is not required to exercise an option has also been expressed in 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 5:18 (4th ed. 1990):

> Especially in cases of options for the sale
> of land, most courts interpret the option as
> conditioned upon the giving of a promise to
> pay the price for the land, that is, as
> calling for the formation of a bilateral
> contract rather than for tender of the
> actual performance, which would be required
> for acceptance in a unilateral contract.
> This interpretation accords with the common
> law preference for bilateral contracts, as
> well as with the business need of
> appropriate time for arranging the necessary
> papers or other arrangements required to
> make the conveyance.

This general rule also comports with the Restatement (Second) of Contracts § 32 (1981), as to the required method of

acceptance of offers:  "In case of doubt an offer is interpreted as inviting the offeree to accept either by promising to perform what the offer requests, or by rendering the performance, as the offeree chooses."

Accordingly, we hold that where an agreement granting an option to purchase a particular tract of land requires that it be exercised on or prior to a designated date, but is silent as to the time at which payment of the stipulated purchase price is to be made, the option may be exercised by the optionee without making or tendering payment at the time of, or coincident with, such exercise.[3]

---

[3] The courts of other jurisdictions have likewise held that where the option agreement does not expressly require payment as a condition precedent to exercise of the option, the optionee may exercise the option by communicating his or her acceptance, and tender of payment is not required. See, e.g., Grey v. Nickey Bros., Inc., 271 F. 249 (5th Cir. 1921) ("[U]nless it is the clear intention of the parties to require both acceptance and performance within the time limit, the time within which an option is to be exercised, relates only to acceptance and not to performance."); Shull v. Sexton, 390 P.2d 313 (Colo. 1964) ("'payment or tender is not essential to acceptance unless the option instrument makes it a condition precedent to, or a part of, or necessary to, the acceptance or the exercise of the option'" (citation omitted)); Parkway Trailer Sales, Inc. v. Wooldridge Bros., Inc., 166 A.2d 710 (Conn. 1960) (holding that where option agreement "was silent as to the manner in which the option was to be exercised," notice of acceptance was sufficient to exercise option); Littlefield v. Brown, 394 A.2d 794 (Me. 1978) (holding that where option agreement does not specify time of payment, optionee may exercise option without tendering payment); Gulf Oil Corp. v. Ferguson, 509 S.W.2d 1 (Mo. 1974) (holding that where option did not expressly or impliedly require payment of purchase price, notice of acceptance was sufficient to exercise option); Siders v. Odak, 513 N.Y.S.2d 549 (N.Y. App. Div. 1987) ("[I]n the absence of a specific provision providing otherwise, an option is a unilateral contract which

The trial court concluded that because the decree gave wife "sixty days in which to purchase," wife had to tender payment within the sixty days in order to exercise the option. However, the decree did not specify that tender of payment was a condition precedent to accepting the offer. In fact, the decree made no mention of the method or timing of payment. Therefore, we conclude that wife was free to choose her method of acceptance, either by giving notice of her acceptance or by actually performing. Furthermore, a contrary reading would permit the husband to exercise his option by simply communicating his acceptance, while requiring the wife to tender full payment for the same piece of property. We reject such a reading as inequitable. See Zimmerman v. Brown, 36 A. 675 (N.J. Ch. 1897) ("Any doubts as to the character of the provisions as to payment should here be resolved in favor of a construction which will preserve the substantial equities of the parties.").

---

calls for acceptance in the form of a promise to create a second, bilateral contract."); International Speedways, Inc. v. Aman, 161 S.E.2d 50 (N.C. Ct. App. 1968) ("Where the terms of the option do not require payment of the purchase price or any part therof before it is exercised, no tender must be shown."); Pennsylvania Min. Co. v. Martin, 59 A. 436 (Pa. 1904) (holding that "the word 'buy,' when applied to a real estate transaction, more often describes the passing of the equitable title from the vendor to the vendee than it does the exchange of the full purchase price and the deed of conveyance").

Wife's first letter to husband on June 26, 1997 constituted a valid acceptance of the option to purchase. In the first letter, wife communicated her full, unequivocal and unconditional acceptance to the terms contained in the final decree. Upon husband's receipt of the letter, the parties had a binding, bilateral, executory contract to sell Parcel A. See Am. Jur. 2d Vendor and Purchaser § 56; Restatement of Contracts 2d § 63 (1981). From that point forward, husband was bound to sell Parcel A to wife, and wife was obligated to buy Parcel A according to the terms contained in the final decree. Any conduct that occurred following the receipt of the first letter pertained to performance, rather than formation, of the contract to sell. Therefore, wife's letter dated July 3, 1997, whereby she attempted to pay less than the full amount for Parcel A, related to performance of her obligation under the contract and did not constitute a failure to properly exercise the option.

Therefore, we hold that wife properly exercised her option to purchase Parcel A. Any subsequent conduct not in accordance with the terms of the contract may form the basis for a breach of contract action by either party but does not affect the existence of the contract.

Because we find wife properly exercised her option to purchase, we do not reach husband's claim that the court did not have the authority to order the sale of Parcel A.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part</u>,
<u>and reversed in</u>
<u>part</u>.