COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Retired Judge Strickland*
Argued at Salem, Virginia


JAMES P. HART, III

                                    MEMORANDUM OPINION** BY
v.   Record No. 0952-02-3              D. ARTHUR KELSEY
                                       JANUARY 28, 2003
MARIE HOLT HART (PRATT)


                FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                  Lawrence D. Diehl, Judge Pro Tempore

          Charles B. Phillips (Phillips & Phillips, on
          brief), for appellant.

          William H. Cleaveland (Leisa Ciafonne, on
          brief), for appellee.


     In 1997, the trial court entered a final decree divorcing

James P. Hart, III, and Marie Holt Hart.  This case comes before

us for the third time.  Asserting several grounds of error, the

husband appeals from the trial court's order entered on March 18,

2002, following our remand from the second appeal.  For the

following reasons, we affirm.

_____

     * Retired Judge Diane McQ. Strickland participated in this
case pursuant to Code § 17.1-400(C).

     ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

During the marriage the parties owned property known as "Plantation Point" fronting Smith Mountain Lake in Bedford County. In the 1997 final divorce decree, Judge Roy B. Willett appeared to have made a complete disposition of Plantation Point by dividing it into three separate tracks of land identified as parcels A, B, and C. Under the decree, the parties would own parcel A as tenants in common with certain specified buy-out options. The decree awarded parcel B to the wife and parcel C to the husband.

The final decree incorporated by reference a survey plat showing parcel A to contain 8.317 acres, parcel B to have 20.601 acres, and parcel C to include 18.676 acres. Parcel C fronts on Smith Mountain Lake. The plat also includes an unlabeled area submerged under the lake. This underwater acreage can be determined only by subtracting the acreage amounts listed for parcels A, B, and C from the total plat acreage of 69.151. That calculation (which nowhere appears in the 1997 final decree or the survey plat) yields 21.557 acres attributable to the submerged property.

The final decree stated that, with one exception, the two reports of Commissioner in Chancery Lawrence D. Diehl were "hereby RATIFIED, CONFIRMED AND APPROVED in all respects . . . ." With respect to Plantation Point, the commissioner's final report included an attached drawing describing parcel C as approximately

-

664,816 square feet (15.26 acres).  The report also made clear that there "shall be no further adjustments for any acreage resulting from the conveyance of Parcel B or Parcel C arising out of underwater flowage easements or acreage under Smith Mountain Lake shown on the Lumsden plat, the compensations between the parties to be based solely on the land acreage as determined in the final survey."

The decree gave the husband sixty days to exercise an option to purchase the wife's share of parcel A.  If the husband failed to do so, the decree then afforded the wife sixty days to purchase the husband's share.  During the pendency of the first appeal,[1] the husband's option period expired.  The wife later exercised her option to purchase the husband's share.  The trial court, however, ruled that the wife failed to exercise the option properly and decreed that parcel A be sold.  On appeal, we reversed and held that the wife properly exercised her option to purchase parcel A.[2] See Hart v. Hart, 35 Va. App. 221, 238, 544 S.E.2d 366, 375 (2001) ("Hart II").  On April 3, 2001, we remanded Hart II "for further proceedings consistent with" our opinion.  Id.

_____

[1] Hart v. Hart, 27 Va. App. 46, 497 S.E.2d 496 (1998) ("Hart I").

[2] Hart I and Hart II contained additional assignments of error that are not relevant to the subject matter of this appeal.

Despite our ruling enforcing the wife's option, the husband refused to transfer parcel A.  In February 2002, the trial court ordered the husband to "execute all appropriate documents with regard" to the conveyance of parcel A and further designated the wife's attorney as special commissioner to execute "any and all documents necessary" for the conveyance of parcel A in the event the husband failed to do so by March 20, 2002.

The husband filed a separate motion raising, for the first time, the failure of the 1997 final decree to dispose of the submerged property.  The husband contended that the oversight was merely a clerical error and asked the trial court to correct it by redrawing the boundary line for parcel C to include the submerged property.  The judge <u>pro</u> <u>tempore</u>, who had previously served as commissioner in chancery in this case, ruled that the error was not a clerical error.  The husband's motion, therefore, sought a "substantive change" in the boundaries previously approved by the court.  The judge <u>pro</u> <u>tempore</u> held that the "court made no determination with regard to that property situated below the 800 foot contour line on the plat [the submerged property] and having heard no evidence on that property, has made no ruling with regard to this acreage."  As a result, the judge <u>pro</u> <u>tempore</u> concluded that under Rule 1:1 he had no jurisdiction to modify the 1997 final decree.

On March 18, 2002, the judge pro tempore entered a decree announcing his decisions on both motions. The decree contained a narrative restatement of the acreage of parcels A, B, and C consistent with the acreage descriptions given on the plat attached to the 1997 final decree. The husband filed a motion to reconsider, arguing that the court exceeded the scope of our remand in Hart II by inserting this restatement of acreage. The court denied the motion.

II.

We apply a de novo review to the trial court's legal conclusions. Under Code § 8.01-680, however, a factual determination cannot be reversed unless "plainly wrong or without evidence to support it." See generally Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992); Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002); Bchara v. Bchara, 38 Va. App. 302, 313, 563 S.E.2d 398, 403 (2002).

The husband argues on appeal that the judge pro tempore (i) exceeded his appointment authority, (ii) violated the scope of our remand in Hart II by appointing a special commissioner to transfer parcel A, (iii) erroneously failed to redefine parcel C to include the submerged property which, the husband argues, was simply a "clerical mistake" in the 1997 final decree, and (iv) erred in providing specific acreage in the March 2002 order.

-

A.

We first address the power of a judge _pro_ _tempore_ to decide these matters. The husband objects to the judge _pro_ _tempore_ appointing the special commissioner because "the authority vests in the Circuit Court Judge who ruled on all matters regarding the boundary lines and the Judge _Pro_ _Tempore_ was acting only as a Commissioner in Chancery during that phase of the trial."

Under Code § 17.1-110, a judge _pro_ _tempore_ is "vested with the same power and authority and shall be charged with the same duties as to the cause in and as to which he is appointed as though he were the regularly elected and qualified judge of such court." The parties, however, may "limit the power of the judge pro tempore to the trial and determination of any specified issue or issues, either of law or fact and in such cases the oath of the person appointed shall correspond to the terms of the stipulation." Code § 17.1-110.

In this case, the husband and wife consented to the appointment of the judge _pro_ _tempore_ and failed to limit his authority in any manner. As a result, the judge _pro_ _tempore_ had the "same power and authority" to decide these matters as a "regularly elected and qualified judge of such court." Code § 17.1-110. That authority necessarily includes the power to enforce the trial court's earlier decrees. We reject the husband's contention to the contrary as meritless.

-

B.

The husband next argues that the judge pro tempore exceeded the scope of our remand from Hart II by appointing a special commissioner to convey to the wife the husband's share of parcel A.  We disagree.  Among other issues we considered in Hart II, we addressed whether the wife had properly exercised her option to purchase the husband's share of parcel A in accordance with the provisions of the 1997 final decree.  We held that she did and remanded the case "for further proceedings consistent" with our opinion.

"Further proceedings" with regard to this particular issue included any enforcement action, if required, to effectuate the conveyance of the husband's share of parcel A to the wife.  That enforcement action became necessary when, a year after Hart II, the husband still had not conveyed his interest in the property.

Code § 20-107.3(K) grants trial courts "continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section . . . ."  That authority includes the power to appoint a "special commissioner" to transfer any property when "a party refuses to comply with the order of the court to transfer such property."  Code § 20-107.3(K)(3); see also Code § 20-107.3(C) (granting the trial court authority to partition marital property).  The judge pro tempore, therefore, did not go outside the scope of our remand

-

in Hart II by exercising his enforcement power under the equitable distribution statute.

                                    C.

The husband contends that the judge pro tempore erred by refusing to correct a clerical error in the 1997 final decree. The decree inadvertently failed, the husband asserts, to include the submerged property within the description of parcel C, which the decree conveyed to the husband. We disagree that this mistake should be characterized as a clerical error.

An exception to Rule 1:1's twenty-one day deadline, Code § 8.01-428(B) authorizes a trial court to correct "clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission . . . ." Before a trial court may invoke the authority to make corrections under Code § 8.01-428(B), "the evidence must clearly support the conclusion that an error of oversight or inadvertence has been made." Cass v. Lassiter, 2 Va. App. 273, 277, 343 S.E.2d 470, 473 (1986); see also Cutshaw v. Cutshaw, 220 Va. 638, 641, 261 S.E.2d 52, 53 (1979). "Such mistakes or omissions must be apparent from the record." Hart, 35 Va. App. at 230, 544 S.E.2d at 370.

"Examples of clerical errors include a typographical error made by a court reporter while transcribing a court proceeding, Lamb v. Commonwealth, 222 Va. 161, 165, 279 S.E.2d 389, 392

-

(1981), or an unintended error in the drafting of a divorce decree, Dorn v. Dorn, 222 Va. 288, 291, 279 S.E.2d 393, 394 (1981)." Wellmore Coal Corp. v. Harman Mining Corp., 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002). Such "[s]crivener's or similar errors in the record, which are demonstrably contradicted by all other documents" in the record "cause the court's record to fail to 'speak the truth.'" Id. (quoting Zhou v. Zhou, 38 Va. App. 126, 133, 562 S.E.2d 336, 339 (2002)) (internal quotations and citations omitted); see also School Board of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 555, 379 S.E.2d 319, 322 (1989) (if it is apparent that a final decree "correctly reflected the court's rulings, correctly recited the proceedings, and was subject to no errors of oversight or omission" the error is not of a clerical nature).

In this case, the judge pro tempore held that no clerical error existed that would authorize amending the 1997 decree to include the submerged property. As the judge explained:

> I intended to divide the land in the way I did, there is nothing that is a clerical error on that. . . . And I did not divide up the water property because, A, I don't know if I had sufficient argument or evidence as to how that should be divided and, B, in hindsight no one really raised that issue to me within the time of the hearing or I assume with the Court later within 21 days of the final decree being entered, and so I have to agree . . . that this is a jurisdictional issue.

Our independent review of the record confirms this ruling. Neither party submitted any evidence of the value of the submerged property or any unique characteristics of this property that would be relevant to the distribution questions before the trial court.

The husband correctly points out that the commissioner's final report states that there would be no "further adjustments" for acreage "under Smith Mountain Lake shown on the Lumsden plat, the compensations between the parties to be based solely on the land acreage as determined in the final survey." We disagree, however, that this provision suggests the trial court intended the submerged property to be included within parcel C.

During the lengthy hearing on October 12, 1996, that generated the final commissioner's report, neither the husband, his attorney, nor any other party suggested that the submerged property be included in parcel C. Rather, all parties appeared to have been under the mistaken assumption that Plantation Point consisted of only about 44 acres — an approximation of the surface area of the property above the 800 foot contour line. On direct examination, the following colloquy occurred between the husband and his attorney:

> Q.   Okay, and did you make – did you prepare
>      this map?
>
> A.   Yes, I did.
>
> Q.   All right, and this is the map of what
>      we know as Plantation Point?

-

A.    Yes, that is correct.

Q.    That consists of approximately 44 acres?

A.    That is right.

Q.    Is that true?

A.    Yes.

Later, the husband confirmed the approximate size of the parcels

contemplated in the partition in kind.

Q.    And how much land would be with Parcel A
      if the green line is followed?

A.    That is eight acres.

Q.    Okay, and how much for B?

A.    Twenty-one.

Q.    All right, 21, and how much for C, which
      would be your land?

A.    Fifteen.

Q.    All right.

If the husband or anyone else had contemplated that parcel C would

include the submerged property, the approximate size would have

been over thirty-five acres, not fifteen.[3]  Because the parties

presented no other evidence regarding the submerged property

between this hearing and entry of the final decree, the trial

court had no evidentiary basis to dispose of the twenty-plus acres

of submerged property.

_____

    [3] We estimate thirty-five acres based on the fifteen acres
stated by the husband during his testimony plus the
approximately 20 acres comprising the submerged property.

-

No doubt an error of some sort has occurred here.  As the judge pro tempore noted, "It concerns me that this was omitted, I would like to be able to do something . . . ."  But this error cannot be characterized as a "clerical" mistake contemplated by Code § 8.01-428(B).  See School Board of Lynchburg, 237 Va. at 555, 379 S.E.2d at 322.  For this reason, the judge pro tempore correctly ruled that he did not "have jurisdiction to address the apportionment of the other acreage underwater."

The continuing appellate process does not change this result.  All non-clerical errors in the 1997 decree should have been raised and resolved in Hart I.  "'An appeal from a decree brings up the whole proceedings in the case prior to the decree . . . .'"  Findlay v. Trigg, 83 Va. 539, 543, 3 S.E. 142, 143 (1887) (quoting J. B. Campbell's Ex'rs v. A. C. Campbell's Ex'r, 63 Va. (22 Gratt.) 649, 672 (1872)).  If a party fails to complain of an error and we adjudicate the appeal "without correcting or noticing the error," the parties cannot raise that error later.  Id.; see also Commonwealth v. Luzik, 259 Va. 198, 206, 524 S.E.2d 871, 876 (2000) ("if a matter is appealed and a party fails to preserve a challenge to an alleged error made by the trial court by assignment of error or cross-error, the judgment of the trial court becomes final as to that issue"); Kaufman v. Kaufman, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991) ("Where there have been two appeals in the case, between the same parties, and the facts

-

are the same, nothing decided on the first appeal can be re-examined on a second appeal."); Krise v. Ryan, 90 Va. 711, 713, 19 S.E. 783, 783 (1894).

                                   D.

        The husband's final contention finds fault with provisions in the March 2002 order reiterating the acreage of the parcels (particularly parcels B and C).  According to the husband, the trial court exceeded the scope of our remand by including such language in the March 2002 order.  Once again, we disagree.

        During argument before the judge pro tempore, the husband moved to amend the final decree to enlarge the boundaries of parcel C to include the submerged property.  The trial court rejected this motion, finding instead that the 1997 final decree did not dispose of the submerged property and that no clerical mistake had been made.  The trial court's March 2002 order then went on to repeat in narrative form the same acreage, according to the court, given of parcel C by the plat map attached to the 1997 final decree.

        Under settled principles, "'when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court.'"  Albert v. Albert, 38 Va. App. 284, 298, 563 S.E.2d 389, 396 (2002) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc)); see also Fredericksburg Constr. Co. v.

                                   -

J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000); Leitao v. Commonwealth, 39 Va. App. 435, 573 S.E.2d 317 (2002). The trial court's interpretive discretion, however, "must be exercised reasonably and not arbitrarily or capriciously." Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 412 (2002) (citation omitted).

Implicit in a trial court's authority to enforce its prior orders is the power to interpret them, particularly when the complaining party raises a dispute over the proper interpretation. We view the March 2002 order as a reasonable interpretation by the trial court of its earlier 1997 final decree. The court gave that interpretation in response to the husband's request for a modification to the 1997 final decree. By seeking that modification, the husband invited the trial court to make an interpretation of its earlier decree.

A party cannot "approbate and reprobate —— invite error and then take advantage of his own wrong." Holden v. Holden, 35 Va. App. 315, 324, 544 S.E.2d 884, 888 (2001) (quoting Steinberg v. Steinberg, 21 Va. App. 42, 50, 461 S.E.2d 421, 424 (1995)). Though the husband did not receive the interpretation he wanted (one the trial court held would have been a substantive modification of the 1997 final decree), he cannot complain that an interpretation was given at all. Thus, because the trial court reasonably interpreted its earlier decree and did not make

-

substantive changes to it, we reject the husband's argument that the March 2002 order violated the limited scope of our Hart II remand.

### III.

In sum, the judge pro tempore did not violate the limits of his appointment power, did not exceed the scope of our remand in Hart II by enforcing the sale of parcel A, did not err in finding the absence of any clerical mistakes in the 1997 final decree, and did not go outside the scope of the remand in restating the parcel acreage and boundary lines in its March 2002 decree.  We thus affirm the trial court on all issues.

Affirmed.