COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Chaney and Lorish
Argued at Salem, Virginia


JOSEPH FRANKLIN SECHRIST

v.      Record No. 1062-23-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE FRANK K. FRIEDMAN
JULY 2, 2024

FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge[1]

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Joseph Sechrist was convicted of illegal possession of methamphetamine and sentenced

to two years in prison with all time suspended.  Sechrist appeals his conviction, arguing the trial

court erred in denying his motion to suppress because law enforcement violated his Fourth

Amendment rights.  The Commonwealth initially asserts that this Court does not have

jurisdiction to hear this appeal because the trial court deferred disposition pursuant to Code

§ 19.2-298.02, resulting in Sechrist waiving his appellate rights.  On the merits, the

Commonwealth asserts the trial court did not err because the whole encounter was consensual,

and in the alternative, law enforcement did not violate Sechrist's Fourth Amendment rights.  We

find that this Court has jurisdiction to consider Sechrist's appeal.  Further, we hold the trial court

did not err in denying Sechrist's motion to suppress.  Thus, we affirm.

---

[1] Retired Judge Collin R. Gibb ruled on the issues now challenged on appeal; however,
Judge Brink entered the final sentencing order.

BACKGROUND[2]

*A. The Underlying Incident and Motion to Suppress*

On October 25, 2021, Deputy Martin ("Martin") of the Patrick County Sheriff's Office was dispatched to the residence of Sechrist's mother to conduct a "wellbeing" check because Sechrist was reportedly trying to commit suicide. Upon arriving at the residence, Martin and his colleague, Deputy Elgin ("Elgin"), entered the residence. There is no dispute that the deputies entered the residence with permission, and Sechrist does not challenge this issue on appeal.

After the deputies entered the residence, Sechrist voluntarily went downstairs to speak with them in the living room. Martin testified that the living room was dark. When Sechrist approached the deputies, Martin immediately observed a knife on Sechrist's person. Martin asked Sechrist to hand over the knife, and Sechrist complied. At this point, Sechrist was "calm" and "cooperative." Martin testified, however, that he was still concerned: "When I first saw the knife on his side and being called there for someone wanting to harm themselves, I am concerned [about] any weapons they have on them . . . ."

After Sechrist gave the deputies the knife, Martin "went to pat [Sechrist] down to make sure he didn't have any other weapons that could possibly harm himself or us." While conducting the pat down, Martin felt a "bulge" in Sechrist's pocket and inquired about it. Sechrist did not respond when Martin asked him about the object. Because Martin thought the "bulge" could be a weapon, he "went into [Sechrist's] pocket to identify the object" and "[Martin] pulled out a sock." At this point, Martin did not know what was inside the sock. Before Martin discovered the unknown object inside the sock, Sechrist "advised that he had found the meth pipe that was in the sock on the side of the road."

---

[2] "'In reviewing the denial of a motion to suppress, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)).

After the pipe was discovered, Martin testified that Sechrist voluntarily handed Elgin a sunglass bag that had been in Sechrist's back pocket. This bag contained methamphetamine. Martin stated that no search was conducted to obtain this bag. Sechrist was never handcuffed during the encounter. The only time Martin put his hands on Sechrist was during the initial pat down. Martin did not ask permission to conduct a pat-down search. While Sechrist did not object to the pat down, he also never provided affirmative consent.

During Martin's testimony, the Commonwealth played body camera footage of the incident. This footage, however, was never admitted into evidence and is not part of the record on appeal. Sechrist did not testify at the hearing or present any evidence. Only Martin provided evidence at the suppression hearing.

After hearing the evidence, the trial court denied the motion to suppress. The trial court noted that it "[did not] have any problem at all with the initial search," and while it is "a question of whether or not it went too far[,] I don't think so, and I'm going to overrule the motion." Sechrist's counsel challenged the court's ruling, and the court explained that it found Sechrist was not detained during the encounter: "I don't think that is detention under the case law." The trial court also stated that it "didn't have a problem" with Martin conducting a pat down for weapons based on the totality of the circumstances.

*B. The Deferred Disposition*

Upon the trial court's denial of the motion to suppress and at the same hearing, Sechrist pleaded not guilty to possession of methamphetamine, stipulated to the sufficiency of the evidence, and requested a deferred disposition as a first-time offender. The Commonwealth did not object to Sechrist's request for a deferred disposition. The court inquired about whether Sechrist could preserve his appellate rights based on the relief he requested. The Commonwealth noted, "Mr. Sechrist is trying as best he can to preserve his appellate rights should he choose to

exercise them. He's pleading not guilty . . . ." During the hearing, the court repeatedly stated that disposition was deferred pursuant to Code § 18.2-251. Sechrist and the Commonwealth agreed. There was no mention of Code § 19.2-298.02 at the hearing.[3]

Months after the hearing, the court entered a written order on a pre-printed form deferring disposition pursuant to Code § 19.2-298.02. During the deferment period, Sechrist was found noncompliant with the terms and conditions of his release; as a result, the trial court entered an order of conviction on the underlying offense. Sechrist was sentenced to two years' incarceration with all time suspended. He appeals the denial of his motion to suppress.

ANALYSIS

*I. Sechrist did not waive his appellate rights by deferring disposition under Code § 18.2-251; therefore, this Court has jurisdiction to review the denial of his motion to suppress.*

On appeal, the Commonwealth argues Sechrist waived his appellate rights by requesting and entering a deferred disposition. Specifically, the Commonwealth asserts that because the court's written order deferred disposition pursuant to Code § 19.2-298.02, Sechrist waived his appellate rights, despite the fact that the court and the parties only discussed Code § 18.2-251 at the hearing. While the Commonwealth acknowledges that Code § 18.2-251 was the only statute mentioned at the hearing, it nonetheless argues that the court deferred disposition pursuant to *both* statutes. Further, the Commonwealth asserts the court satisfied the notice requirement of Code § 19.2-298.02 by stating at the hearing that it was unsure whether Sechrist could preserve his appellate rights by deferring disposition.

The court's written order was entered pursuant to Code § 19.2-298.02. The statute states in pertinent part:

---

[3] For purposes of this appeal, determining which statute was employed to implement deferral is significant because deferral under Code § 19.2-298.02 carries a waiver of the right to appeal; reliance on Code § 18.2-251 does not.

- 4 -

By consenting to and receiving a deferral of proceedings or a deferral of entry of a final order of guilt and fulfilling the conditions as specified by the court as provided by subsection A, the defendant waives his right to appeal such entry of a final order of guilt.

Prior to granting a deferral of proceedings, a deferral of entry of a conviction order, if none, or a deferral of a final order, the court shall notify the defendant that he would be waiving his rights to appeal any final order of guilt if such deferral is granted.

The only statute discussed by the court and the parties at the hearing, Code § 18.2-251, provides in relevant part:

Whenever any person who has not previously been convicted of any criminal offense under this article or under any statute of the United States or of any state relating to [drugs], or has not previously had a proceeding against him for violation of such an offense dismissed as provided in this section, or pleads guilty to or enters a plea of not guilty to possession of a controlled substance under § 18.2-250, the court, upon such plea if the facts found by the court would justify a finding of guilt, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place him on probation upon terms and conditions.

For those accepting and utilizing a deferred disposition under Code § 19.2-298.02, the statute clearly imposes a waiver of appellate rights; no such waiver occurs for those proceedings under Code § 18.2-251.[4] Sechrist contends that the court and both parties agreed to proceed under Code § 18.2-251, and thus he did not waive his appellate rights. Sechrist asserts that the written order purporting to defer disposition under Code § 19.2-298.02, entered months after the hearing, was erroneous and constitutes a clerical error because that statute was never discussed at the hearing and neither party agreed to proceed under it. Rather, Sechrist argues the parties and the court deferred disposition at the hearing only pursuant to Code § 18.2-251. At the hearing,

---

[4] "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *see also Hollingsworth v. Norfolk S. Ry.*, 279 Va. 360, 366 (2010).

the Commonwealth stated, "Sechrist would like to take advantage of the first offender program as he has never had a prior drug conviction. We have no objection." The court then expressly provided that it deferred disposition under Code § 18.2-251: "Alright, so . . . with that, he's got a motion for two fifty-one. Is that what we're doing?" The Commonwealth responded in the affirmative. The trial court orally stated that disposition would be deferred under Code § 18.2-251 for one year provided that Sechrist remain drug free, complete 100 hours of community service, and be on probation for one year.

Here, the proceedings portrayed by the record flatly contradict the order referencing deferral under Code § 19.2-298.02; this leads us on a collision course with the well-established rule that a "trial court speaks only through its written orders." *Walton v. Commonwealth*, 256 Va. 85, 94 (1998) (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996)). Moreover, generally "[w]hen a court's statements from the bench conflict with its written order, the order controls." *Anonymous B v. Anonymous C*, 51 Va. App. 657, 672 (2008).

However, Virginia precedent establishes that the rule that trial courts speak "only through their written orders" is a "rebuttable presumption." *Dir. of the Dep't of Corr. v. Kozich*, 290 Va. 502, 511 (2015) (quoting *McMillion v. Dryvit Sys.*, 262 Va. 463, 469 (2001)). Thus, where a scrivener or clerical error is made, we are not bound to blindly follow an obvious mistake. This authority to correct the record is somewhat narrow, but it is satisfied here. "[W]here the record clearly establishes what was intended, we must give force and effect to that intent rather than rely solely on precise and technical wording of the court's written order." *Guba v. Commonwealth*, 9 Va. App. 114, 118 (1989). "Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." *Zhou v. Zhou*, 38 Va. App. 126, 133 (2002). "Such mistakes or omissions must be apparent from the record." *Hart v. Hart*, 35 Va. App. 221, 230 (2001).

In this case, we agree with Sechrist that the record conclusively established that the trial court deferred disposition pursuant to Code § 18.2-251. The record plainly reveals that the court and both parties agreed that this was the statute being utilized. Further, the Commonwealth did not object at the hearing or otherwise suggest an additional statute was being employed. As a result, the written order on the pre-printed form entered by the trial court three months after the hearing was a clerical error. *See* Code § 8.01-428(B); *see also State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 212 (2005). There is no evidence in the record, besides the written order, to support the notion that the trial court or the parties intended to defer disposition pursuant to Code § 19.2-298.02. Moreover, the trial court expressly stated at the hearing that it was deferring disposition under Code § 18.2-251. In fact, Code § 18.2-251 specifically applies to first time drug offenders which was precisely Sechrist's status. Under these circumstances, we find that the written order constitutes a clerical error which can be corrected. *See Sch. Bd. v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 555 (1989) (finding that a court can correct the record under Code § 8.01-428(B) when the record clearly supports the correction); *Murry v. Commonwealth*, 62 Va. App. 179, 189 (2013) (remanding to fix scrivener's error referencing wrong statute in sentencing order); *Haefele v. Commonwealth*, 75 Va. App. 591, 606 n.7 (2022) (remanding to fix scrivener's error in sentencing order).

For the foregoing reasons, we hold that Sechrist preserved his appellate rights by deferring disposition as a first-time offender pursuant to Code § 18.2-251.[5] We remand the matter to the trial court to correct the clerical error. *See* Code § 8.01-428(B).

---

[5] Even if the Commonwealth were correct that the court deferred disposition pursuant to both statutes, it still would not change the result here because the court did not meet the rigors of Code § 19.2-298.02, which states in relevant part that the "court shall notify the defendant that he would be waiving his rights to appeal any final order of guilt" by pursuing this course. We reject the Commonwealth's suggestion that the court complied with this notice provision by questioning whether Sechrist waived his appellate rights. Questioning whether Sechrist would waive his rights does not satisfy the requirement that the court "shall notify the defendant" that

*II. Assuming without deciding that the entire encounter was not consensual, the trial court did not err in denying the motion to suppress.*

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal." *Jones v. Commonwealth*, 277 Va. 171, 177 (2009). "[T]he appellate court is required to give deference to the factual findings of the trial court and to determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements." *Bolden v. Commonwealth*, 263 Va. 465, 470 (2002) (quoting *McCain v. Commonwealth*, 261 Va. 483, 489 (2001)). "The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020); *see also McCain*, 261 Va. at 490. "In ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing and at trial." *Hairston v. Commonwealth*, 67 Va. App. 552, 557 n.1 (2017).

Appellate courts must "presume—even in the absence of specific factual findings—that the trial court resolved all factual ambiguities or inconsistencies in the evidence in favor of the prevailing party and gave that party the benefit of all reasonably debatable inferences from the evidence." *Hill v. Commonwealth*, 297 Va. 804, 808 (2019). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995). "The textual 'touchstone of the Fourth Amendment is reasonableness.' When applying this basic principle, the Supreme Court has 'consistently

---

he is, in fact, waiving his appellate rights. Therefore, even if the parties had considered deferral under Code § 19.2-298.02—which they did not—there was no compliance with the statute's requirement that the court "notify the defendant that he would be waiving his rights to appeal[.]" The record conclusively demonstrates that Sechrist was not informed that he would waive appellate rights by accepting a deferral and he did not agree to waive his rights.

eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.'" *Robinson v. Commonwealth*, 273 Va. 26, 39 (2007) (quoting *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 358 (4th Cir. 1998)).

In certain circumstances, a police officer may conduct a limited search of a subject who has been detained. *See Terry v. Ohio*, 392 U.S. 1, 31 (1968). An officer who conducts a pat-down search is justified in removing an item from a subject's pocket if the officer reasonably believes that the object might be a weapon. *Grandison v. Commonwealth*, 274 Va. 316, 319-20 (2007). "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Harris v. Commonwealth*, 241 Va. 146, 149 (1991) (alteration in original) (quoting *Terry*, 392 U.S. at 27); *see also Peguese v. Commonwealth*, 19 Va. App. 349, 351 (1994) (holding officer may conduct limited pat down where officer suspects, based on specific and articulable facts, that person may be armed and presently dangerous). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Harris*, 241 Va. at 149 (quoting *Terry*, 392 U.S. at 27); *see also Lowe v. Commonwealth*, 33 Va. App. 656, 661 (2000). "[T]he United States Supreme Court has instructed that '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Collins v. Commonwealth*, 297 Va. 207, 229 (2019) (second alteration in original) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam)).

Sechrist argues that Martin had no legal authority to conduct a limited pat down for weapons because Martin had no reason to believe Sechrist may be armed and dangerous. In

support of this position, Sechrist notes that Martin testified that Sechrist was "calm" and "cooperative." Sechrist contends there was no reasonable suspicion that he was involved in criminal activity and notes that he was in his mother's residence—not a high-crime area.

As an initial matter, there is no dispute that the deputies had permission to enter the residence. *Cf. Caniglia v. Strom*, 141 S. Ct. 1596, 1598 (2021) (holding community caretaking duties do not create a stand-alone doctrine justifying warrantless entry into the home). After the deputies received permission to enter the residence, Sechrist voluntarily went downstairs to talk with them in the living room, at which point the deputies immediately observed a knife on Sechrist's person. While Sechrist complied with the deputies' request to hand it over, Martin testified that he was still deeply concerned based on the report Sechrist had just tried to kill himself, the immediate discovery of a knife in plain view on Sechrist, and the possibility that Sechrist might possess additional weapons. At the time of the pat down, the "wellbeing" check had not concluded, nor had the deputies dispelled concern that Sechrist was no longer a threat to himself.

Martin then conducted a limited pat down to ensure the safety of the deputies and Sechrist. Martin's testimony supports the Commonwealth's position that upon encountering the bulge in Sechrist's pocket, Martin remained concerned that Sechrist possessed weapons. As Martin pulled out the source of the bulge, Sechrist stated the object contained a meth pipe that he found on the side of the road. Upon Sechrist's admission that he possessed a pipe for smoking illegal drugs, the deputies had probable cause to arrest Sechrist for illegal drug possession.[6] Sechrist then voluntarily provided the deputies with the sunglass bag that contained

---

[6] "[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (alteration in original) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)).

methamphetamine.[7]  In the light most favorable to the Commonwealth, we cannot say Martin's

pat down of Sechrist, under these circumstances, was unreasonable.[8]

In sum, we hold that Martin's pat down of Sechrist did not violate the Fourth Amendment

because, under the totality of the circumstances, the deputies had reasonable suspicion that

Sechrist was armed and a danger to himself and others.  In support of this finding, we emphasize

that the deputies had consent to enter the residence, had information that Sechrist attempted to

kill himself just prior to their arrival, and Sechrist approached the deputies with a weapon in

plain view.  Based on this evidence, the deputies did not offend the Fourth Amendment by

conducting a limited pat-down search to ensure everyone's safety.  Therefore, we affirm the trial

court's denial of Sechrist's motion to suppress.[9]

CONCLUSION

We hold that this Court has jurisdiction to consider Sechrist's appeal because the record

conclusively establishes that his disposition was deferred pursuant to Code § 18.2-251, and, even

if disposition had been deferred under Code § 19.2-298.02, Sechrist was not notified that he

---

[7] We note that Sechrist claims that he only provided the sunglass bag to the deputies after minutes of questioning without receiving *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings. However, in the light most favorable to the Commonwealth, the evidence does not support this claim.

[8] "Under our standard of review, a factfinder may draw reasonable inferences from basic facts to ultimate facts, and those inferences cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*." *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (internal quotation marks omitted) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)).

[9] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018).  Given our holding, we do not address the Commonwealth's additional arguments that the trial court's ruling should be affirmed under either the community caretaker doctrine or the emergency aid exception. *See Merid v. Commonwealth*, 72 Va. App. 104 (2020) (applying emergency aid exception), *aff'd*, 300 Va. 77 (2021), *cert. denied*, 142 S. Ct. 1137 (2022); *McCarthy v. Commonwealth*, 73 Va. App. 630 (2021) (applying community caretaker doctrine).

would be waiving his appellate rights as required by the statute if he proceeded in that manner. We remand the case to the trial court to cure the clerical error in its prior order. On the merits, we hold the trial court did not err in denying Sechrist's motion to suppress because law enforcement had legal authority to conduct a pat-down search based on the facts of this case, and thus we do not disturb the trial court's ruling.

*Affirmed and remanded.*