### Richmond

JAMES DAWSON DORN

V.

PAULA CAROL DORN

June 12, 1981.

Record No. 800951.

Present: Harrison, Poff and Thompson, JJ. and Harman, S.J.

*David W. Bouchard* for appellant.
*Kenneth L. Dietrick* for appellee.

HARMAN, S.J., delivered the opinion of the Court.

The sole issue here is whether Rule 1:1[1] or *Richardson* v. *Moore,* 217 Va. 422, 229 S.E.2d 864 (1976), precludes a trial court, under Code § 8.01-428(B),[2] from correcting, *nunc pro tunc,*

---

[1] Rule 1:1 provides:

All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer. But notwithstanding the finality of the judgment, in a criminal case the trial court may postpone execution of the sentence in order to give the accused an opportunity to apply for a writ of error and supersedeas; such postponement, however, shall not extend the time limits hereinafter prescribed for applying for a writ of error.

[2] Code § 8.01-428(B) provides:

B. *Clerical mistakes.* Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an

a mutually unintended drafting error contained in a divorce decree.

With the aid of their attorneys, James D. Dorn and Paula C. Dorn (now Paula C. Benoit), in the process of obtaining a divorce, drafted and signed a stipulation agreement, which included a provision for the support of the couple's two children, James G. Dorn and Brian R. Dorn. The stipulation agreement, along with other evidence, was submitted to a Commissioner in Chancery on February 19, 1976. Following the Commissioner's report, the trial court incorporated the terms of the stipulation agreement into a decree of divorce *a mensa et thoro* in April of 1976 and a decree of divorce *a vinculo matrimonii* in August of 1976.

The stipulation agreement provided that the husband "shall pay to the wife as child support and maintenance for the said James Gregory Dorn, the sum of $100.00 bi-weekly, and . . . for the said Brian Ray Dorn, the sum of $100.00 bi-weekly, said payments being payable every two weeks." An examination of the stipulation agreement signed by the parties reveals that the agreement, as initially drafted, provided for payments of "$100.00 per month" for each child. "[P]er month" was erased, and "bi-weekly" was substituted in its place. The circuit court's initial and final decrees provide for payments of "$100.00 bi-weekly" for each child.

The husband has made payments of $200.00 per month for the support and maintenance of the couple's two children from February of 1976 to date. In 1979, the wife brought this action, claiming the husband owed $400.00 per month for the support and maintenance of the children. The husband, alleging that the use of "bi-weekly" was a "mutually unintended drafting mistake," petitioned the court to enter an order *nunc pro tunc* modifying the decree in order to correct the alleged error.

The circuit court conducted an evidentiary hearing at which the attorneys involved in the negotiations, the husband, and the wife testified concerning the alleged drafting error. The attorney who drafted the stipulation agreement testified that he had substituted "bi-weekly" for "per month" in an attempt to insure that payments were made every other week and that he did not intend to change the total amount due each month. After hearing the evi-

appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

dence, the trial judge ruled that Rule 1:1 and *Richardson v. Moore, supra,* precluded the court from modifying a support order containing a drafting error. In light of his ruling, the trial judge made no finding as to whether the stipulation agreement and divorce decrees contained a mutually unintended drafting error. Accordingly, we will restrict our review to the legal issue decided by the trial court.

█ We believe that this case is governed by *Cutshaw v. Cutshaw,* 220 Va. 638, 261 S.E.2d 52 (1979), a case upholding a trial court's entry of a *nunc pro tunc* order modifying child support payments. In *Cutshaw,* we held that an attorney's failure to prepare an order for entry by the court, deemed to be an "oversight", could be corrected by a *nunc pro tunc* order. *Id.* at 641, 261 S.E.2d at 53. We noted that Code § 8.01-428(B) authorizes a court to correct such errors "when the record clearly supports such corrections." *Id.* Because the *Cutshaw* record clearly established that an error had been made, the trial court had the authority to modify the child support payments through a *nunc pro tunc* order. *Id.*

Code § 8.01-428(B) authorizes a trial court to correct "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission. . . ." Just as the attorney's failure to prepare a court order was an "oversight" in *Cutshaw,* we believe the attorney's alleged drafting error in this case is an "oversight" which can be corrected by a *nunc pro tunc* order.

Rule 1:1 allows a trial court to modify or vacate an earlier judgment for any reason within 21 days of the entry of the judgment "and no longer". This Rule, however, was not intended to limit, and in fact could not limit,[3] the trial court's statutory authority to correct clerical errors in the judgment or errors "therein arising from oversight or from an inadvertent omission . . . at any time. . . ." Code § 8.01-428(B).

█ *Richardson v. Moore, supra,* likewise does not limit the trial court's statutory authority to modify a support order *nunc pro tunc* in order to correct errors covered by Code § 8.01-428(B). In *Richardson,* we held that a wife's passive acquiescence in the husband's termination of spousal and child support for 25 years

---

[3] The Constitution of Virginia, art. VI, § 5, prohibits the promulgation of any court rule "in conflict with the general law as the same shall, from time to time, be established by the General Assembly."

did not relieve the husband of his obligation to comply with a court order providing for such payments. *See also Alig* v. *Alig,* 220 Va. 80, 255 S.E.2d 494 (1979) (wife's statements to husband did not relieve the husband of his obligation). These decisions are the progeny of *Cofer* v. *Cofer,* 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965), in which we held that Code § 20-108, authorizing a court to amend a divorce decree, was designed "to operate prospectively and relates to future provisions for support" and did not grant courts the authority to modify support orders retroactively. We conclude, however, that Code § 8.01-428(B), unlike § 20-108, gives courts the authority to enter *nunc pro tunc* orders modifying support obligations in the rare situation where the evidence clearly supports the conclusion that an error covered by Code § 8.01-428(B) has been made. *Cutshaw* v. *Cutshaw,* 220 Va. at 641, 261 S.E.2d at 53; *see Lamb* v. *Commonwealth,* 222 Va. 161, 279 S.E.2d 389 (1981) (this day decided); *Council* v. *Commonwealth,* 198 Va. 288, 94 S.E.2d 245 (1956).

For the reasons stated, the judgment of the trial court will be reversed and the case remanded for further proceedings to determine whether the evidence clearly supports the husband's claim that the separation agreement and divorce decrees contained a mutually unintended drafting error.

*Reversed and remanded.*