**Norfolk**

LINDA CASS

v.

PAUL FRANKLIN LASSITER

No. 0123-85

Decided May 6, 1986

COUNSEL

David M. Zobel (Inman, Lee, Olivieri & Huffman, on brief), for appellant.

John B. Gaides, Jr., for appellee.

OPINION

**COLEMAN, J.**—We review a finding made by the trial court in a proceeding on a rule to show cause which found Paul Franklin Lassiter, appellee (husband), not in arrears with support payments required by the provisions of a 1973 *a mensa et thoro* decree which was merged into the final decree on November 21, 1974. The *a mensa* decree incorporated a separation agreement entered into by the parties, and required that the husband pay to the wife $400 per month for child support. The controversy over enforceability of the decree arises because of a conflict in the support provision of the parties' separation agreement and the support provisions of the decree itself. The separation agreement provided that husband pay the unitary sum of $400 per month for both spousal and child support.[1] It also contained a further provision that at the end of one year, the parties would "study" the amount of support in light of their needs and capabilities; however, if they were unable to agree, the matter could be referred to the court for determination. The agreement contained no provision for change in support should the wife remarry. The *a mensa* decree, although directing compliance with the agreement, contained a separate paragraph requiring the husband to pay $400 per month child support and made no reference to spousal support.

Following an evidentiary hearing, the trial court concluded that the conflict in the two support provisions was the result of clerical errors and found that the support provision of the decree was in-

---

[1] The support provisions in the agreement were inserted by interlineation. The original wording provided that Lassiter would pay Linda Cobb Lassiter (now Cass) $400 per month "for the support, maintenance, welfare and education of the children." At some point "the children" was stricken over and the words "Linda Cobb Lassiter and the children of this marriage" inserted. It is noteworthy that the interlineation has the effect of bringing the support provisions within the requirements of *Commissioner of Internal Revenue* v. *Lester*, 366 U.S. 299 (1961), rendering the payments tax deductible by husband and taxable as income to wife.

tended as a unitary sum of support for both the spouse and children. Insofar as we can ascertain, the court concluded that the portion of the unitary sum attributable to spousal support should have abated upon the wife's remarriage[2] in 1974, and that the amount of the abatement had been determined by a judicial proceeding instituted by the wife in North Carolina in 1975 which directed the husband to pay the sum of $150 per month child support. The chancellor further found that the husband had complied with payment of the $400 per month support provisions up to the wife's remarriage and thereafter paid the sum of $150 per month as child support as required by the North Carolina court. Upon finding the husband not in arrears, the court refused to issue a contempt citation or to enter judgment against husband for any arrearage. This appeal followed by Linda Cass (wife).

Wife and husband were married in North Carolina in 1963. Two children were born of the marriage—a daughter born February 28, 1966, and a son born October 16, 1967. On November 6, 1973, the parties entered into the marriage settlement agreement which contains the support provisions in controversy. On December 18, 1973, wife was granted a decree of divorce *a mensa et thoro* in which the court "confirmed, ratified, and approved" the parties' agreement of November 6, 1973, and ordered "the parties [to] fully comply with [its] terms." The decree, however, further ordered "the plaintiff [husband] to pay to the complainant (sic)" $400 per month "for the support, education, and maintenance of said infant children."

Husband moved to North Carolina after the divorce, which was final on November 11, 1974. On January 14, 1975, wife, who had remarried, filed a petition under the Uniform Reciprocal Enforcement of Support Act (URESA)[3] in the Juvenile and Domestic Relations Court in Chesapeake seeking to enforce against husband payment of his monthly child support through the North Carolina courts. Her petition affirmed under oath that the issue of support

---

[2] Code § 20-109.1 provides, in pertinent part: "If such agreement provides for the maintenance of either of such parties, upon the remarriage of such party the court shall order that such maintenance shall cease as of the date of such marriage, and upon the death of such party the court shall order that no payment shall be made to the estate of such decedent on account of such provision, unless such agreement otherwise specifically provides in the event of remarriage or death."

[3] This Act is codified in Code §§ 20-88.12 through 20-88.31 (amended in 1974 to "Revised Uniform Reciprocal Enforcement of Support Act").

was either pending or had been ordered by the Circuit Court of Virginia Beach and that she required $400 per month support. The Superior Court for Davidson County, North Carolina, entered an order on February 19, 1975, directing husband to pay $150 per month "for the support and maintenance of his said dependents." Both parties agree that husband made all monthly payments under the North Carolina order through November, 1984.

On July 2, 1984, wife filed a petition for a Rule to Show Cause against husband in Virginia Beach, followed by a notice requesting arrearages in child support payments from July, 1974, to July, 1984. On December 26, 1984, after an evidentiary hearing, the court held that the decree *a mensa et thoro* entered December 18, 1973, contained clerical errors, which the court corrected by entry of a *nunc pro tunc* decree, and then ruled that considering the modification of the support provision entered by the North Carolina court, husband had paid all support payments as required by the decree.

Wife contends that the court erred in refusing to enforce the provisions of the 1973 decree directing payment of $400 per month child support and assigns the following grounds: (1) there was no clear, convincing and conclusive evidence that the conflicting language in the decree and agreement was the product of clerical errors in drafting the decree which would justify correction or reformation of the decree; and (2) that even if the court properly corrected or reformed the support provisions in the decree to conform to the support provisions of the separation agreement, it could not retroactively abate the accrued support based upon the North Carolina URESA order. We conclude that the trial court properly determined that clerical errors in drafting were proven, justifying the trial court's correction of the support provisions of the decree; however, we hold that the trial court erred in finding that husband complied with the terms of the Virginia decree based upon his compliance with the North Carolina order of child support.

Code § 8.01-428(B) confers upon a court the power to correct on its own initiative clerical mistakes in judgments which arise from oversight or inadvertent omission. However, to invoke such authority the evidence must clearly support the conclusion that an error of oversight or inadvertence has been made. *Dorn* v.

*Dorn,* 222 Va. 288, 292, 279 S.E.2d 393, 395 (1981). It is apparent from the irreconcilable inconsistencies between the support provisions in the agreement and the decree that a drafting error occurred in preparing one or the other. Both parties conceded that other obvious drafting errors were present in the decree. In the absence of any explanation as to why the parties and court might have intended to include inconsistent provisions or how both could be enforceable, the trial court had clear and convincing evidence to support its finding of a clerical error justifying correction.

Which provision the court should have determined to be correct depended upon both the original intent of the parties upon entering into the agreement and the intent of the court in its 1973 decree. The parties' intent that support be a unitary sum of $400 for child and spousal support was memorialized in their written agreement. While the court was not bound or limited by the unitary sum in the agreement insofar as child support was concerned, *see Wickham* v. *Wickham,* 215 Va. 694, 697, 213 S.E.2d 253, 750, 752 (1975); Code § 20-108, the record contains no suggestion that the court intended to reject the support provisions of the agreement in order to judicially determine child support. To the contrary, had the court intended to disregard the support provisions of the agreement as to child support, it would not have ratified, confirmed, approved or directed compliance with the entire document, which had the effect of rendering the agreement's provisions enforceable as if by decree. *See Morris* v. *Morris,* 216 Va. 457, 458-59, 219 S.E.2d 864, 867 (1975).

The finding by the court that the error occurred in drafting the decree is further buttressed by the nature of the interlineated change in the agreement. The language in the decree is identical to that in the agreement prior to interlineation, suggesting that the decree was drafted with language which inadvertently omitted the changes later agreed upon by the parties for tax purposes. We find the evidence of oversight was clear from the record, and affirm the court's action in correcting the decree.

Having corrected the decree to reflect the terms of the agreement, the court found that husband had met his obligations for child support and denied wife's motion for judgment for over $29,000 in arrearages. The agreed facts were that husband had paid $150 per month since the 1975 North Carolina order, rather than $400 per month. Between 1975 and 1984 wife accepted the

amounts paid but did nothing to affirmatively release any support obligation. In reaching its conclusion, the court apparently reasoned that the 1975 North Carolina URESA petition filed by wife fulfilled the agreement provision that after one year the parties would reconsider the amount of support, deferring "to the court for [re]determination" if necessary. The court further concluded that the North Carolina decree directing husband to pay $150 per month in child support modified the support provision in the 1973 agreement, thus eliminating husband's original support obligation under that agreement. These findings were in error.

Wife filed a URESA petition with the North Carolina court because husband was not making his full $400 per month payments required by their agreement and by the Virginia decree *a mensa et thoro*. The Uniform Reciprocal Enforcement of Support Act was adopted to create an economical and expedient means of enforcing support orders for parties located in different states. *Scott* v. *Sylvester*, 220 Va. 182, 185, 257 S.E.2d 774, 776 (1979). The uniform act is a form of reciprocal legislation designed, in part, as a "supplementary mechanism directed at enforcing previously entered orders rather than a device for terminating or modifying child support." *Coons* v. *Wilder*, 93 Ill. App. 3d 127, 131, 416 N.E.2d 785, 789 (1981). There is no evidence indicating that the parties reconsidered, pursuant to the agreement, husband's support obligation after the first year. Nor does the evidence justify a finding that the North Carolina enforcement proceeding constituted a redetermination of support pursuant to the agreement.

Nevertheless, the effect, if any, of the North Carolina support order on the Virginia decree must still be determined. Even if we assume that the North Carolina support enforcement order intended to reduce the amount of husband's support obligation because of wife's remarriage, nevertheless, the foreign order did not constitute a redetermination of support nor a modification of the Virginia support decree. URESA provides that a Virginia support order is not nullified by a support order made by a court of any other state unless otherwise specifically provided by the court. Code § 20-88.28:2. It is provided, however, that:

[a]mounts paid for a particular period pursuant to any support order made by the court of another state shall be

credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

*Id.* Thus, we conclude that the North Carolina URESA proceeding did not alter or modify the support obligation under the parties' agreement or the 1973 decree but that payments made thereunder must be credited to the obligation of Lassiter.

Accordingly, the ruling of the trial court insofar as these proceedings were concerned and upon the evidence presented was in error. We reverse and vacate the finding that husband paid his support obligations as ordered by the court based upon the approved agreement, and we remand the case for further consideration of arrearages, to whose benefit such arrearage may be payable, and whether judgment should be entered thereon pursuant to Code § 20-79.1.

We do not intend by this ruling to foreclose further inquiry, in an appropriate proceeding, to construe the separation agreement in order to determine, first, whether the husband is entitled upon a showing of necessity because of the remarriage to have the unitary sum of support apportioned, and second, whether any amount of the unitary award was intended to be spousal support and whether pursuant to the provisions of Code § 20-109.1 a court can order the portion of a unitary award attributable to spousal support to have ceased upon the remarriage of the wife. *See McLoughlin* v. *McLoughlin,* 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970).

Generally, the wife's silent acquiescence in accepting a lesser amount of support for several years does not relieve husband of his obligation of payment in accordance with the terms of an order, *see Newton* v. *Newton,* 202 Va. 515, 518, 118 S.E.2d 656, 658 (1961), nor does the wife's failure to enforce payment for a long period constitute laches which would bar enforcement. *Richardson* v. *Moore,* 217 Va. 422, 423, 229 S.E.2d 864, 866 (1976). Support obligations ordered by the original decree of divorce become vested as they accrue and a court is without authority to make any change as to past due installments. *Cofer* v. *Cofer,* 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965). We do not decide whether these general principles would preclude apportionment of the unitary award on these facts or prevent a court from ordering the portion attributable to spousal support to have ceased

upon remarriage. Neither the issues nor evidence to so decide have been presented in this proceeding.

In summary, we affirm the trial court's entry of a corrected decree but reverse and vacate the finding that husband paid his support obligations thereunder. We remand this case for such further consideration and proceedings as are consistent with the rulings herein.

*Affirmed in part,*
reversed in part,
and remanded.

Duff, J., and Hodges, J., concurred.