## CIRCUIT COURT OF FAIRFAX COUNTY

Edward A. Beck, III

v.

Virginia Bell Beck

June 6, 2003

Case No. (Chancery) 168913

BY JUDGE ARTHUR B. VIEREGG

This case came before me on Complainant Edward A. Beck's Motion to Enforce Property Settlement Agreement and on Defendant Virginia Bell Beck's Cross-motion to Enforce Property Settlement Agreement (PSA) and/or Interpret and Enforce Agreement. Mr. Beck seeks to require Ms. Beck to specifically perform her agreement to sell him her interest in their jointly owned Johns Road Property in accordance with the terms of the PSA. Ms. Beck contends that her agreement to sell her interest in the Property required Mr. Beck to meet certain unsatisfied conditions and asks that the Johns Road Property be placed on the market for sale. After oral argument, I took the matter under advisement. Following the hearing, each party was also permitted to file supplemental memoranda in support of their position.

### Facts

On October 4, 2000, Mr. Beck filed a Bill of Complaint for divorce in this Court. No final decree of divorce has been entered. On July 11, 2001, the

parties met with a Neutral Case Evaluator (NCE) in order to resolve outstanding property disputes. The agreement reached with the help of the NCE was transcribed, and a property settlement agreement based on that agreement was drafted by Ms. Beck's counsel. Ms. Beck's counsel prepared a draft PSA and sent a copy to Mr. Beck's counsel. This draft contained a different buyout formula from that agreed upon with the NCE. Mr. Beck identified the difference, but did not inform Ms. Beck or her counsel of it. He sent back a new draft with other changes. The parties executed the Property Settlement Agreement (PSA) on August 22, 2002. No conversations had taken place between the parties' attorneys related to the changes. On August 23, 2002, this Court ratified, affirmed, and incorporated the agreement into a Consent Order.

Paragraph 5, of the PSA, "Real Property," provided that each party would have the opportunity to buy out the other's interest in two parcels of jointly owned real estate. The husband was afforded the option to buy the wife's interest in the Johns Road property. Ms. Beck's purchase of the other property, the Vermont Street Property, is not in dispute.

The PSA contained a procedure for determining the price for Mr. Beck's purchase of Ms. Beck's interest in the Johns Road property. If the parties were unable to agree on a fair market value and purchase price, both parties would hire an appraiser. If either of the parties did not accept that appraised value, the dissenting party could obtain a second appraisal from an alternate appraiser. If that appraisal was not acceptable, the two appraisers were authorized to designate a third appraiser, whose valuation would be binding on both parties. The PSA provided that the first appraisal would be obtained within three weeks of August 21, 2002, the second appraisal was to occur within three weeks of the first, and the third appraisal was to occur within three weeks of the second appraisal. The PSA did not contain an express "time is of the essence" provision for the sale of the properties.

After execution of the PSA, the parties obtained an appraisal of the Johns Road property. After the first appraisal, Mr. Beck informed Ms. Beck that he would exercise his option to purchase the Johns Road Property. Ms. Beck objected to the first appraisal, obtained by Mr. Beck and requested and arranged for a second appraisal. She did not procure it within three weeks of the first appraisal. Mr. Beck did not approve of the second appraisal, and so a third appraisal of the property was obtained. The third appraisal was completed in January, 2003; Mr. Beck received it in February. Mr. Beck made arrangements to close his purchase of Ms. Beck's interest, but Ms. Beck was

unavailable on the chosen date, March 6, 2003. On March 10, 2003, Ms. Beck informed Mr. Beck that she would not comply with the buyout provisions of the PSA requiring her to sell her interest in the property to Mr. Beck.

## Deadline for the Sale of the Property

Mr. Beck seeks specific performance of Ms. Beck's agreement to sell him her interest in the Johns Road Property. He argues that the wife's failure to cooperate in the buyout of her interest in the Johns Road property caused the delays in the appraisal process and that nothing in the PSA foreclosed his continued right to buyout Ms. Beck's interest in the Johns Road property.

Ms. Beck first contends that the PSA contained a deadline for the sale of the Property, which was not met, and therefore Mr. Beck's option to purchase the Johns Road property lapsed. Hence, she argues, the property was required to be placed on the market and sold for the highest offer received. The PSA states: "and if he does not wish to purchase the property, then the property shall be listed for sale promptly, but after consultation with a tax accountant/attorney so as to minimize the capital gain tax effect of sale as described below … but in all events, the property shall be listed for sale by no later than January 30, 2003." (Property Settlement Agreement, p. 6.) She contends "in all events" made time of the essence for Mr. Beck's purchase by January 30, 2003, a deadline that was not met by him.

The Virginia Supreme Court of Virginia has recognized "Equity has established the rule that in contracts for the sale of real estate, time is not of the essence unless expressly stipulated in the agreement, 'or it necessarily follows from the conduct of the parties or the nature and circumstances of the agreement.' The intention of the parties, as demonstrated by their words and acts, is the controlling factor. And the intention to make time essential will not be inferred from the mere appointment of a date for delivery of the deed, or the payment of the purchase price." *Wood v. Wood*, 216 Va. 922, 924, 224 S.E.2d 159 (1976), quoting *Sims v. Nidiffer*, 203 Va. 749, 752, 127 S.E.2d 85 (1962).

In this case, an express time of the essence provision was not contained in the PSA, nor did the parties' actions reflect that time was intended to be "of the essence." The appraisals required by the PSA were not completed in the time periods set forth. There was testimony from both parties that it was difficult to obtain dates for the scheduling of the appraisals, and the parties proceeded with Mr. Beck's buyout of the property after the January 30, 2003,

deadline. From the evidence presented, I find that it was not the intent of the parties for time to be of the essence for Mr. Beck to consummate his purchase of Mrs. Beck's interest in the Johns Road property. Because the PSA contained no express time of the essence provision and because the parties did not treat the January 30, 2003, date as being of the essence of Mr. Beck's duty to buy Mrs. Beck's interest, the PSA does not preclude a sale after that date.

Furthermore, every contract contains the implied provision not to prevent or hinder performance of that contract. "There is an implied condition of every contract that one party will not prevent performance by the other party. Hence, if one of the contracting parties prevents the other party from performing under a contract, he cannot prevail in an action for nonperformance of the contract which he himself has brought about." *Whitt v. Godwin*, 205 Va. 797, 800, 139 S.E.2d 841 (1965). Ms. Beck cannot profit from the parties' failure to meet approval deadlines when she contributed to that failure.

### Mutual Mistake, Fraud, and Scrivener's Error

Ms. Beck first contends that the parties made a mutual mistake of fact with respect to the formulas stated in the PSA for Mr. Beck's purchase of Ms. Beck's interest in the Johns Road Property. This position, however is fatally undermined by Mr. Beck's testimony that he had calculated the sales price based on the "new" formula authored by Ms. Beck's counsel and that its inclusion was satisfactory to him. Since Mr. Beck was not mistaken, mutual mistake as to the buyout formula was accordingly not proven.

Ms. Beck next argues that nondisclosure by Mr. Beck of his discovery of the changed formula constituted a false representation in the formation of the parties' agreement, and his actions accordingly constituted constructive fraud. "Marriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their intermarital dealings. However, if a husband and wife separate and employ attorneys to negotiate an agreement in settlement of their property rights, they become adversaries and their former fiduciary or confidential relationship ends." *Derby v. Derby*, 8 Va. App. 19, 27, 378 S.E.2d 74 (1989). In this case, both parties were represented by counsel during the negotiation of the PSA, and both parties testified that they reviewed the PSA with counsel prior to signing it. But Ms. Beck failed to prove any representations by Mr. Beck. Ms. Beck's own counsel was the source of the changed formula. Nor did Mr. Beck's nondisclosure of the change constitute a fraudulent concealment, since he had no duty to question a

formula expressly set forth by Ms. Beck's attorney. Consequently, although Ms. Beck may have proven a mistake on her part, she has not proven by clear and convincing evidence fraudulent misrepresentations or concealment by Mr. Beck.

Ms. Beck lastly argues that the buyout resulted from a scrivener's error, as it does not match the one agreed upon at the meeting with the NCE, and may be corrected by this Court. Va. Code § 8.01-428(B) allows the Court at any time on its own initiative or upon the motion of any party to correct clerical mistakes arising from oversight or from an inadvertent omission. However, Mr. Beck testified that there was no mistake as to the terms in the agreement because he considered them to be a counter-offer. Ms. Beck testified that she read the agreement with counsel and agreed to them. Nor has Ms. Beck cited authority requiring the application of the doctrine of scrivener's error to the facts of this case. Each of the cases cited by her in this regard are patently distinguishable. See *Bergman v. Bergman*, 52 Va. Cir. 131 (Fairfax 2000); *Artis v. Artis*, 10 Va. App. 356, 392 S.E.2d 504 (1990); *Dorn v. Dorn*, 222 Va. 288, 279 S.E.2d 393 (1981); *Cass v. Lassiter*, 2 Va. App. 273, 343 S.E.2d 470 (1986). Mrs. Beck has failed either to factually or legally sustain her burden of demonstrating that a scrivener's error requires a reformation of the PSA.

For the reasons set forth above, I conclude that Ms. Beck has (1) not shown that Mr. Beck failed to timely exercise his duties necessary to purchase her interest in the Johns Road Property; and (2) has not sustained her burden of proving mutual mistake or fact, unilateral mistake of fact accompanied by fraud, or scrivener's error, necessary to defeat Mr. Beck's contract right to purchase the Johns Road Property pursuant to the terms contained in the PSA.

Ms. Beck is ordered to fulfill her obligation for Mr. Beck to buy out her interest in the Johns Road property in accordance with the terms of the PSA within 60 days of entry of the order. No fees or costs are awarded.