COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


BETTY BARNARD

                                        MEMORANDUM OPINION* BY
v.        Record Nos. 0168-05-2 and 0593-05-2        JUDGE RUDOLPH BUMGARDNER, III
                                        NOVEMBER 1, 2005
RUSSELL H. BARNARD


              FROM THE CIRCUIT COURT OF AMELIA COUNTY
                   Carl J. Witmeyer, II, Judge *pro tem*

              Bruce E. Arkema (Cantor Arkema, P.C., on briefs), for appellant.

              Ronald S. Evans (Alexander S. de Witt; Brenner, Evans & Millman,
              P.C., on brief), for appellee.


       Betty Barnard appeals from a decree divorcing the parties on the ground of a one-year

separation, setting spousal support for a limited period, and classifying and distributing the

marital estate.  We affirm in part and reverse in part.

       The parties married January 28, 1989 and separated in February 2002.  After learning that

the wife, without his approval or permission, sold his 240-acre farm on January 22, 2002 to his

estranged son, the husband filed a bill of complaint for a divorce March 19, 2002.  A judge *pro

tem* heard the case *ore tenus* December 9, 2003.  The parties submitted memoranda in January,

and the judge issued letter opinions February 11 and April 28 and entered the final decree

December 30, 2004.  The wife appealed.  After a show cause hearing for the husband's failure to

pay spousal support, the judge *pro tem* issued an order February 15, 2005, from which the wife

also appealed.  The wife's appeals have been consolidated.

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The final decree awarded the wife spousal support of $400 per month but limited the award to five years. It also provided the award could not be modified during or extended beyond the five-year term. The wife argues the amount of support is insufficient and the limitations on duration and modification are in error.

The husband was 79 years old and suffered from the early stages of Alzheimer's disease. He worked during the marriage, and his estate provided the bulk of the parties' income. He claimed monthly income of $2,286 and expenses of $2,137. His expenses included $1,500 to pay the debt he incurred to reacquire title to his farm. The wife maintained he earned $4,000 per month and lived rent-free at the farm. The husband conceded the farm paid him a modest income and paid many of his bills including electricity, heating oil, house maintenance, real estate taxes, and homeowner's and health insurance.

The wife was 70 years old and in relatively good health. She completed high school, attended some business school, and obtained a cosmetology degree. She sold her salon before the marriage, but her cosmetology license was still valid. The wife was training 20 hours per week to be a cashier at a grocery but claimed arthritis prevented her from working with her hands for more than 25 hours per week. Her monthly income from social security benefits and part-time work was $839. Her expenses included $600 for rent, $194 for utilities, $451 for her car, and $296 for health insurance.

The trial court considered "the disparity in income earnings and income potential for earnings," the parties' advanced age and declining physical and mental health, their reasonably foreseeable needs, the length of the marriage, and the wife's role in its dissolution.[1] The trial

---

[1] While the trial court held the wife's sale of the farm did not amount to desertion warranting a divorce on that ground, it considered the wife's misconduct in determining the parties' marital debts and in refusing her request for attorney's fees and half of the Citizens Bank & Trust certificate of deposit. It found the wife "wrongfully caused [cost] Mr. Barnard over $60,000.00 and that marital debt has been absorbed solely by him."

court has broad discretion to determine whether and how much spousal support to award, and its decision will not be reversed absent a clear abuse of discretion. Code § 20-107.1(C); Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002); Dukelow v. Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986). The record reflects that the trial court properly exercised its discretion in setting support at $400 per month. We affirm the amount of the spousal support.

The trial court placed two restrictions on its award of spousal support. It limited payment to five years and prohibited modification of the amount or the duration of the award. Neither party requested rehabilitative spousal support. They neither presented evidence nor made arguments about a limited duration award.

Defined duration support awards are designed for marriages of short duration and are generally used to enable a spouse to obtain an educational degree or certificate to increase earning capacity. Peter N. Swisher, Lawrence D. Diehl, and James R. Cottrell, Family Law: Theory, Practice, and Forms § 9:7, at 284 (2005). However, Torian v. Torian, 38 Va. App. 167, 184-85, 562 S.E.2d 355, 364 (2002), affirmed a seven-year limitation following a 26-year marriage because the wife received extensive Individual Retirement Account assets in the equitable distribution.

In this case, the trial court gave no explanation for setting a five-year limit to its award, and the record does not indicate any apparent reason for the limitation. While the statute does not provide guidelines or limit the conditions under which a defined duration award is appropriate, any award must be based on the reasonably foreseeable future and not upon mere speculation. Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990). Under these facts, the trial court erred in exercising its discretion in fixing a defined duration award. Accordingly, we reverse the five-year limit to the award.

The trial court also decreed the support award could not be modified or extended. Code § 20-109(B) authorizes the modification of an award upon proof of a change in circumstances warranting a change. See Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996). The trial court cannot abdicate its continuing jurisdiction and must consider properly filed petitions for modification. Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990). Accordingly, we reverse the restriction on modification of the support award.

The wife contends the trial court erred in classifying the stock in National Commerce Financial Corporation and the shares in the AIM Investment Fund and in failing to award her an equal share. The wife maintains that the two assets were marital property because she proved the husband gave her an equal share in them.[2] She stresses that the husband added her name to the certificates as a joint owner during the marriage. She maintains the husband intended a gift when he retitled them.

The husband owned stock in National Commerce Financial Corporation, successor to CCB Financial Corporation, prior to the marriage. On November 17, 1997, he directed the company to reissue his stock in his name and his wife's name with rights of survivorship. On March 23, 2000, he directed the AIM Investment Fund to add the wife's name to his account as a joint holder. The wife testified that the husband said he wanted to add her name to the accounts and that he told her "it was a gift." The husband denied that he intended to make a gift of the retitled assets. During cross-examination, the wife testified:

---

[2] We treat the stock and the fund as the husband's separate property because the parties assumed that it was during the trial. The wife raised for the first time in her reply brief the suggestion that some of the stock and some of the funds in the AIM account were presumed marital because they were acquired during the marriage. This position was never presented to the trial court. At trial, her position accepted the assets as separate property and only claimed they became marital property through the husband's gift when he retitled them in their joint names.

The record does not establish when or how the husband acquired additional stock or his shares in the fund.

> Q: You don't really ever recall [the husband] saying a gift, do you, using those words?
> A: I don't know what else it would be.
> Q: That's your assumption. He never said those words?
> A: Maybe a time or two he did.
> Q: But you can't recall as to which of the assets he said that and to which he did not?
> A: No.

"When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification." Code § 20-107.3(A)(3)(f). The wife must prove the husband intended half the property was a gift to her. See Lightburn v. Lightburn, 22 Va. App. 612, 617, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). The mere retitling of separate property into joint ownership does not create a presumption that a gift was intended. Code § 20-107.3(A)(3)(g)(iii).

While several assets were retitled into joint ownership, the trial court held only the National Commerce stock and the AIM account were the husband's separate property. The classification of property was a question of fact, and the trial court's ruling will not be disturbed on appeal unless plainly wrong or without evidence to support it. Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005). The record does not reflect the wife proved as a matter of law that the husband made a gift of the National Commerce stock and the AIM account. Accordingly, we affirm the classification that they were the husband's separate property.

The wife contends the trial court erred in failing to award her a one-half interest in the Citizens Bank certificate of deposit. The husband purchased the $60,000 certificate during the marriage and cashed it at maturity February 28, 2002. The trial court specifically found that the

wife's unilateral sale of the husband's farm constituted wrongful conduct that caused the husband to spend the proceeds of the certificate to reacquire the farm.

The husband expended $105,000 to reacquire his farm after the wife unilaterally used a power of attorney to convey it to an estranged son for less than the appraised value. The husband deposited the $60,000 proceeds from the certificate into a bank account and borrowed an additional $60,000, which was still an outstanding debt. The husband paid his attorney $33,000, paid the attorney that represented the farm and the son who ran it $25,000, and paid $5,000 to an attorney for mediation services. The husband paid $50,000 to his estranged son representing the down payment that the son had made to acquire the farm. The husband also satisfied the refinanced note the estranged son executed to purchase the farm. The husband set aside the remaining funds to pay his attorney fees in the divorce proceeding.

We cannot say the trial court abused its discretion in not awarding the wife a one-half interest in the $60,000 Citizens Bank certificate of deposit. The evidence supports the decision. Accordingly, we affirm.

A considerable amount of the trial dealt with interpretation of the rights to the husband's real estate that accrued to the wife under the prenuptial agreement. The agreement provided that the husband would execute a will devising the wife a life estate in his residence. In a handwritten note appended to the agreement, the husband requested that his estate be responsible for the wife's hospital insurance. The wife maintained those provisions entitled her to a life estate in the marital residence and to health insurance. She appealed the denial of her claims.

During oral argument, both parties conceded that adjudication of any claims to real estate or health insurance arising from those provisions of the agreement was premature. They acknowledged that no breach of the agreement could occur before the husband's death and no cause of action could arise unless the wife survived his death. Accordingly, we do not address

those issues on this appeal other than to vacate the rulings of the trial court to the extent they adjudicated those interests.

Finally, we consider the wife's contention that the trial court erred in amending its final decree after twenty-one days. The trial court entered the final decree December 30, 2004. It provided the wife received "50% of the amounts in the Citizen Bank Accounts." The husband objected to that provision because "no such bank accounts existed or currently exist," and both parties requested clarification. The trial court entered an order February 15, 2005 that provided,

> it was not the intent of the Court that the [wife] should have any portion of the Citizens Certificate of Deposit in the approximate amount of $60,000.00 that was cashed in by the [husband] in order to defer certain fees and costs incurred in litigation to have the conveyance of his farm overturned.

Code § 8.01-428(B) "gives courts the authority to enter *nunc pro tunc* orders modifying support obligations in the rare situation where the evidence clearly supports the conclusion that an error covered by Code § 8.01-428(B) has been made." Dorn v. Dorn, 222 Va. 288, 292, 279 S.E.2d 393, 395 (1981). "[T]o invoke such authority the evidence must clearly support the conclusion that an error of oversight or inadvertence has been made." Cass v. Lassiter, 2 Va. App. 273, 277, 343 S.E.2d 470, 473 (1986).

We hold the order entered February 15, 2005 clarified the final decree but did not impermissibly modify it. The subsequent order did not change any decision made in the earlier order but only resolved confusion arising from the description employed in the earlier decree. Accordingly, we affirm the trial court.

We hold the trial court erred in imposing a five-year limitation to the award of spousal support and in restricting its modification. We vacate any adjudication of the real property rights

or medical insurance entitlements arising from the prenuptial agreement.  In all other respects we

affirm.  We remand for entry of a spousal support award consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>vacated in part,</u>
<u>and remanded.</u>