COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Ortiz and Friedman
Argued by videoconference


MICHAEL B. YOURKO
                                                          OPINION BY
v.       Record No. 0363-21-1              JUDGE FRANK K. FRIEDMAN
                                                      DECEMBER 21, 2021
LEE ANN B. YOURKO


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Charles E. Haden for appellant.

Kyle J. Burcham (Heather Larson Pedersen; Pedersen Law, PLLC,
on brief), for appellee.


Michael Yourko ("husband") appeals from the trial court's dismissal of his motion for

modification of a final decree and equitable distribution order, and a military pension division

order.  Husband assigns error to the circuit court's refusal to modify these orders.

The parties to this divorce negotiated an agreement regarding the division of husband's

military retirement pay.  A year later husband challenged the orders complaining that aspects of

the agreement to divide his military retirement pay were violative of federal law.  Husband

accurately depicts the orders' improper terms, and federal law's preemption and repudiation of

these terms, but Lee Ann Yourko ("wife") claims the collateral attack came long after the circuit

court lost jurisdiction over the orders under Rule 1:1.  Husband argued that the orders could be

challenged at this juncture as the product of a mutual mistake or clerical error, or, in the

alternative, he contended that the orders were void *ab initio* or non-final.  The circuit court

refused to set aside the challenged orders.  We reverse.

## I. FACTUAL BACKGROUND

Wife filed a complaint for divorce from husband. After husband filed a counterclaim and both parties filed answers, the circuit court entered a final decree and equitable distribution order as well as a military pension division order on January 28, 2020. The final decree and equitable distribution order noted that the parties had "memorialized a division of marital assets and debts in an Equitable Distribution Agreement" which the court followed. The final decree and equitable distribution order set the amounts the court determined husband was to pay wife in child and spousal support. The military pension division order stated the terms of husband's military retirement division. It provided under the title "Amount of Payment:" "[t]he former Spouse is awarded thirty percent (30%) of the Service Member's disposable military retired pay."[1] The military pension division order goes on to state under paragraph 9 titled "Level of Payments:"

> The parties have agreed upon the level of payments to the Former Spouse to *guarantee* income to her; based upon military retired pay with a deduction for disability compensation, resulting in the Former Spouses' share equaling $1,202.70 per month. *The Service Member guarantees the level agreed upon by the parties and agrees to indemnify and hold Former Spouse harmless as to any breach hereof.* Furthermore, *if the Service Member takes any action, including additional waiver of retired pay for disability compensation which reduces the former spouse share she is entitled to receive, then he shall indemnify her by giving to her directly the amount by which her share or amount is reduced as additional property division payments which do not terminate upon remarriage or cohabitation.* Service Member hereby consents to the payment of this amount from any periodic payments he received (such as wages or retired pay from any source) and this clause may be used to

---

[1] As is discussed *infra*, the maximum amount that a spouse of a servicemember can receive as a marital share of pension benefits in a divorce is 50%. 10 U.S.C. § 1408(e)(1). Here, wife was granted 50% of the benefits accrued during the marriage. This came to 30% of the total benefits due husband – this was so because husband joined the military more than eleven years before the marriage. The parties agreed that husband had 336 total months of service; 206 of these months came during the marriage. See Starr v. Starr, 70 Va. App. 486, 492 (2019).

> establish his consent (when this is necessary) for the entry of an order
> of garnishment, wage assignment, or income withholding.

(Emphasis added.)

While husband objected to certain "indemnification" language included in the circuit court's orders, the orders adopted the basic points of the parties' agreement and the orders became final without either side appealing them. At the time the parties negotiated wife's share of the military benefits, they genuinely believed husband would receive $4,009 per month in disposable retirement pay. However, sometime after the final decree, the military's Defense Finance Accounting Service ("DFAS") computed husband's disposable retirement pay to be only $844 per month, the remainder being disability pay which is not divisible in divorce proceedings. Therefore, DFAS calculated wife's 30% share of disposable retirement pay to be $253.20 per month rather than the $1,202.70 per month agreed to in paragraph 9.[2] The "indemnification" and "guarantee" language in paragraph 9, accordingly, required husband to pay almost $1,000 per month more in military benefit based pay to wife than DFAS calculated was due.

Over a year after entry of the final decree and pension order, husband filed a motion to reinstate and the circuit court revived the case on its docket. Husband then filed a motion for modification of the final decree and equitable distribution order and pension order. Husband argued that at the time the parties negotiated wife's share of his military retirement pay, they believed husband would receive $4,009 per month in disposable retirement pay, resulting in their calculation of wife's share at $1,202.70 per month. Husband now contended that since DFAS calculated his disposable retirement pay at a total of only $844 per month (the remainder being disability pay) the original calculation and agreement were hopelessly flawed.

---

[2] This difference in retirement pay was not due to any action taken by husband in order to receive more disability pay.

Since disability pay is not divisible in divorce proceedings under federal law, husband argued that the parties' mistaken calculation in the final order effectively gave wife 140% of his divisible disposable retirement pay – plainly in violation of the 50% maximum allowed by federal law. 10 U.S.C. § 1408(e)(1). Husband also maintained that federal law prohibited the circuit court from requiring him to indemnify wife for any reduction she received in divisible disposable pay. He contended that the circuit court should modify its ordered monthly payment of $1,202.70 either because the order was not final, paragraph 9 contained a mutual mistake resulting in a clerical error, or it was void *ab initio* as contrary to federal law and Supreme Court precedent.

The circuit court found it could not reopen the case because the twenty-one-day deadline in Rule 1:1 had passed. It dismissed husband's motion for modification. It also specifically found there was no mutual mistake or clerical error. This appeal followed.

## II. STANDARD OF REVIEW

Husband's assignment of error asks this Court to interpret federal statutes, Virginia statutes, federal case law, and Virginia's common law precedent. The assignment of error therefore presents questions of law that this Court reviews *de novo*. See Eley v. Commonwealth, 70 Va. App. 158, 162 (2019) (noting that questions of statutory law are reviewed *de novo*); Commonwealth v. Greer, 63 Va. App. 561, 568 (2014) (stating that interpretation of the common law presents a legal question "reviewed *de novo* on appeal"). Generally, review of claims alleging a mutual mistake involve mixed questions of law and fact. While the court's underlying findings of fact are entitled to deference, the ultimate conclusion of whether particular conduct constitutes a scrivener's error is a question of law to be reviewed *de novo*. See Westgate at Williamsburg Condo. Ass'n, Inc. v. Richardson, 270 Va. 566, 575 (2005). Where the essential facts are undisputed, a question of law is presented regarding the circuit court's application of the law to those facts. See Rodriguez v. Leesburg Bus. Park, 287 Va. 187, 193 (2014).

III. ANALYSIS

A. The Final Decree and Equitable Distribution Order and Military Pension Division Order were Final for the Purposes of Rule 1:1.

A final judgment is "one which disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment." Super Fresh Food Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 560 (2002). It is well settled that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1. The same is true for final divorce decrees. Jackson v. Jackson, 69 Va. App. 243, 247 (2018). Equitable distribution and support orders, although subject to a trial court's continuing jurisdiction, are nonetheless considered "final judgments" for purposes of Rule 1:1's twenty-one-day window. See Hastie v. Hastie, 29 Va. App. 776, 780 (1999) ("It is well settled that equitable distribution orders become final within twenty-one days of entry."). They may be modified by a subsequent order, but only while the court retains jurisdiction for twenty-one days, or otherwise by reservation or statute. Id.[3]

The final decree here was a final judgment; it resolved all substantive issues. The final decree declared the divorce between husband and wife, while also dictating equitable distribution divisions between husband and wife. It resolved support levels and custody issues. The pension order set the division of husband's retirement pay. The final decree or pension order would have needed to convey the intent to "forestall[] the *commencement* of the twenty-one day time period of

---

[3] Several Virginia statutes provide avenues for the trial court to modify a previous domestic order. For example, Code § 20-107.3(K) expressly grants authority to trial courts to have continuing authority and jurisdiction in divorce matters for the limited purpose of making additional orders "necessary to effectuate and enforce any order entered pursuant to this section," including orders to affect or divide any retirement plans. Code § 20-109(B) grants trial courts authority to modify awards of spousal support upon a material change in circumstances.

- 5 -

Rule 1:1" in order to retain jurisdiction. <u>Ruffin</u>, 263 Va. at 563.[4] By the time husband filed a motion for modification, over a year after the final decree and pension order were entered, the circuit court had lost jurisdiction to rewrite the challenged orders unless the orders were void *ab initio* or fell within a statutory exception to Rule 1:1.

### B. There was No Mutual Mistake or Clerical Error Allowing a Modification of the Final Decree or Pension Order after Twenty-one Days.

Husband argues that, even if the circuit court lost its jurisdiction to modify its orders after twenty-one days, the circuit court still had the power to modify the orders if they contained a clerical error. He relies on Code § 8.01-428(B) which provides trial courts the authority to modify final orders beyond the twenty-one-day mark set by Rule 1:1 when they contain clerical errors "arising from oversight or from an inadvertent omission." Husband argues that, because the parties were gravely mistaken about the amount of retirement pay husband would receive from DFAS, their mutual mistake resulted in a clerical error that the court had the power to modify.

Generally, a clerical error under Code § 8.01-428(B) can be described as a "scrivener's" error or "similar errors in the record, which are demonstrably contradicted by all other documents," and cause the record to fail to "speak the truth." <u>Wellmore Coal Corp. v. Harman Mining Corp.</u>, 264 Va. 279, 283 (2002). A mutual mistake under Code § 8.01-428(B) can occur when the parties use an incorrect word or phrase in the written agreement that is different from what the parties had agreed on. For example, in <u>Dorn v. Dorn</u>, 222 Va. 288 (1981), the parties agreed to a monthly support level, but in drafting the agreement mistakenly wrote that the payments would be made

---

[4] Here, the final decree did allow for the case to be retained on the court's docket for six months "for entry of the appropriate Approved Domestic Relations Orders for the purpose of the division of retirement benefits, and any amendments thereto that may be necessary to effectuate the parties' agreement." The pension division order, a qualified domestic relations order, was, in fact, entered the same day as the final decree. Husband suggests that the orders remained interlocutory because the circuit court reserved the right to extend support after ten years, but this does not render the orders non-final.

"bi-weekly," rather than "per month." Dorn, 222 Va. at 290-91. The Supreme Court found the record supported an "oversight" in the written order that mistakenly doubled support requirements. Id. at 291-92. The Court ruled that the statute gave the trial court power to modify support obligations in the "rare situation where the evidence clearly supports the conclusion that an error covered by Code § 8.01-428(B) has been made." Id. at 292.

Husband relies on an unpublished case from this Court, Lewis v. Lewis, No. 1042-15-1 (Va. Ct. App. May 17, 2016), to support his argument. In Lewis, the parties entered into an agreement indicating that spousal support would "terminate upon the remarriage or the death of either party." Id. at 2. The husband then remarried and stopped paying the wife her support based on *his* remarriage. Id. at 2-3. The wife filed a motion alleging the husband was in default of his payments, arguing that the separation agreement should have included "her" before "remarriage," and the exclusion of "her" was a scrivener's error. Id. at 3. The trial court agreed with the wife. Id. at 5. On appeal, we agreed that this was a scrivener's error and upheld the finding of the court that the wife had met her burden and established that a mutual mistake had occurred. Id. at 10. See also Hughes v. Hughes, No. 1745-00-1, slip op. at 2-7 (Va. Ct. App. June 19, 2001) (finding that there was a modifiable mutual mistake in a separation agreement and order involving a military spouse's eligibility for health insurance through the military). In Hughes we stated that in "determining whether a mutual mistake of fact existed at the time of agreement, the inquiry is . . . whether each party held the same mistaken belief with respect to a material fact *at the time the agreement was executed*." Id. at 6 (emphasis added) (quoting Collins v. Dep't of Alcoholic Beverage Control, 21 Va. App. 671, 681 (1996)).

Here, husband admits that the amount listed on the pension order was what the parties thought was *correct* at the time of entry of the orders. In looking at the plain language of Code § 8.01-428(B), there was no "oversight" that resulted in a mutual mistake. The parties negotiated

and calculated the amount that wife would receive based on the facts known to them at the time. This is evidenced in the record by the fact husband provided an exhibit to the trial court in which he calculated the marital share of benefits to be $1,226.19, not nearly the $253 he now relies upon after DFAS' subsequent calculation. There was no oversight by the parties in the written form of their agreements; the order reflected what the parties intended at the time they executed their agreement. There was no typographical error, omission of a critical word, incorrect date, or other error that resulted in a clerical error. After execution of the agreement and entry of the orders, DFAS simply rendered an unexpected decision as to husband's retirement pay.

Simply put, the orders husband now seeks to attack "spoke the truth" and accurately reflected the parties' intentions at the time of their agreement. The circuit court found that there was no mutual mistake or clerical error allowing the trial court to modify the order after twenty-one days. This Court agrees with that reasoning.

C. The Orders Impermissibly Divide Husband's Disability Pay in Violation of Federal Law.

A court order may also be attacked after twenty-one days when it is void *ab initio*. See Bonanno v. Quinn, 299 Va. 722, 736-38 (2021); Rawls v. Commonwealth, 278 Va. 213, 218 (2009). Husband contends that the disputed orders are void *ab initio* as they flatly violate federal law. Wife contends the orders were appropriate under Virginia law.

1. Legal Background and History Regarding the Division of Military Retirement Pay in Divorce.

a. Disposable Retirement Pay is Divisible in Divorce Proceedings – But Disability Pay is Not Divisible.

In McCarty v. McCarty, 453 U.S. 210 (1981), the United States Supreme Court addressed whether military retirement pay, generally, was divisible at divorce.[5] Id. at 211. The Supreme

---

[5] Historically, military veterans from the time of the Revolutionary War period have been provided retirement pay for disability, but it was not until the Civil War that military veterans received non-disability military retirement. McCarty, 453 U.S. at 212.

Court decided that the application of community property law conflicted with the federal military retirement scheme; in other words, it found that state courts could not divide military retirement pay between divorcing spouses because, in part, Congress intended that the retirement pay – a taxpayer funded benefit – was to reach the veteran retiree only. Id. at 223-32.

In response, Congress passed the Uniformed Services Former Spouses Protection Act ("USFSPA"), setting forth the conditions under which state courts could divide some military service benefits. Mansell v. Mansell, 490 U.S. 581, 584 (1989). The USFSPA permits state courts to treat "disposable retirement pay" as the property of both the veteran and the veteran's spouse under state domestic relations law. 10 U.S.C. § 1408(c)(1). In defining "disposable retirement pay," however, the USFSPA specifically excludes, *inter alia*, military retirement pay waived in order to receive veterans' disability payments. 10 U.S.C. § 1408(a)(4)(A).[6]

The Supreme Court of the United States addressed the impact of the USFSPA on divorcing military spouses within a few years of its enactment. In Mansell, the Court acknowledged that the legislature intended to allow state courts to divide military retirement pay between divorcing spouses but distinguished the divisibility of disability pay (which cannot go to a former spouse). 490 U.S. at 586-88. The Court explained that the grant of power to state courts was "precise and limited" and did not include the authority to divide any portion of a veteran's retirement pay that was "waived in order to receive veterans' disability payments." Id. at 588-89. Accordingly, the Supreme Court held that the USFSPA preempts a state court's

---

[6] Eligible military veterans may waive a portion of retirement pay in order to receive an equivalent amount of disability pay. 38 U.S.C. § 5305. Unlike standard military retirement pay, disability pay is not taxed, and therefore veterans often elect to waive retirement pay in order to receive an equivalent amount of disability pay. 38 U.S.C. § 5301(a)(1); Howell v. Howell, 137 S. Ct. 1400, 1403 (2017). The choice to waive retirement pay in order to receive disability pay can be presented to and made by veterans decades after spouses have agreed to divide the veteran's retirement pay in divorce.

ability to "treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." Id. at 594-95.

b. The Prohibition Against Requiring Servicemembers to "Indemnify" or "Reimburse" Against Reductions or Waivers of Retirement Pay

In 2017, the Supreme Court heard Howell v. Howell, 137 S. Ct. 1400 (2017), in which the Court considered whether a state court could order a veteran to indemnify, or reimburse, a former spouse for any difference in retirement pay to the former spouse as a result of the veteran waiving retirement pay in favor of disability pay. Id. at 1402, 1406. In Howell an Arizona family court ordered a veteran to ensure that his ex-spouse would continue to receive 50% of his original retirement pay, as determined by their divorce thirteen years prior, without regard for the disability pay he had elected to start receiving. Id. at 1404. In essence, the Arizona Supreme Court concluded that the spouse had a "vested" interest in the original, higher amount. Id. The Arizona Supreme Court found that the family court was not in violation of Mansell because it had not actually divided the veteran's disability pay, did not direct him to rescind his waiver, and did not direct him to give his disability pay to his former spouse. Id. It reasoned that the family court "simply ordered [the veteran] to 'reimburse' [former spouse] for 'reducing . . . her share' of military retirement pay." Id. The Supreme Court of the United States soundly rejected this logic.

Howell, like Mansell, found that federal law preempted state courts from dividing waived military retirement pay between divorcing spouses. Id. at 1405. Significantly, it also decided that an indemnification or reimbursement to compensate a former spouse for the waived military retirement pay was in violation of federal law. Id. at 1406. The Supreme Court proclaimed:

> In this case a State treated as community property and awarded to a
> veteran's spouse upon divorce a portion of the veteran's total
> retirement pay. Long after the divorce, the veteran waived a share
> of the retirement pay in order to receive nontaxable disability
> benefits from the Federal Government instead. Can the State

> subsequently increase, pro rata, the amount the divorced spouse
> receives each month from the veteran's retirement pay in order to
> indemnify the divorced spouse for the loss caused by the veteran's
> waiver? The question is complicated, but the answer is not. Our
> cases and the statute make clear that the answer to the
> indemnification question is "no."

Id. at 1402 (citations omitted); see also id. at 1406 ("All such orders [containing indemnification

provisions] are . . . pre-empted.").

In explaining its holding, the Howell Court pronounced that, even if an indemnification

provision does not specifically require that a veteran use his disability pay to indemnify or

reimburse the former spouse, the purpose of such a requirement contradicts and seeks to

circumvent the Mansell holding. Id. The Court bluntly held that requiring a former spouse to

indemnify or reimburse an ex-spouse for the lost retirement pay is a semantic difference and

nothing more. Id. Ordering a veteran to pay a former spouse the difference in benefits after a

disability pay deduction, particularly a dollar-for-dollar reimbursement, would "displace the

federal rule and stand as an obstacle to the . . . purposes and objectives of Congress." Id.[7]

Wife, nonetheless, argues that Virginia state law allows parties to negotiate an equitable

distribution agreement that considers both retirement benefits and disability benefits in fixing the

civilian spouse's share. She cites to Owen v. Owen, 14 Va. App. 623, 628 (1992), and McLellan

v. McLellan, 33 Va. App. 376, 382 (2000), for the proposition that the circuit court did not order

the division of disability payments, but permissibly required husband to guarantee and indemnify

---

[7] See also Foster v. Foster, 949 N.W.2d 102 (Mich. 2020) (relying on Howell in
concluding the trial court erred in requiring veteran to reimburse a former spouse for the
reduction in benefits due to his receiving non-disposable special pay); Merrill v. Merrill, 137
S. Ct. 2156, 2156 (2017) (vacating and remanding a judgment "in light of [Howell]," which
found that the family court could enter an indemnification order to compensate a former spouse
for a reduction in her share of non-disposable elected benefits); Cassinelli v. Cassinelli, 138
S. Ct. 69, 69 (2017) (vacating and remanding a judgment "in light of [Howell]," which found
that a military spouse was required to reimburse a civilian spouse for electing to waive
retirement pay and receive disability benefits, though reimbursement need not be directly from
the disability benefits).

a sum certain to wife from any of his available assets based on the parties' negotiated agreement. Both Owen and McLellan essentially subscribed to the view that divorcing couples could circumvent the Mansell prohibition by agreement.

Notably, Howell was decided well after both Owen and McLellan approved such agreements. Again, the Howell Court made clear that using semantics to circumvent Mansell in an attempt to divide disability pay is not allowed. Howell, 137 S. Ct. at 1406; see Foster v. Foster, 949 N.W.2d 102, 111-13 (Mich. 2020) (explaining that a reimbursement of waived retirement pay was no different than a division of the disability benefits themselves, and finding the plaintiff's argument that the parties agreed to the reimbursement unpersuasive in changing that analysis). In light of Howell, to the extent Owen and McLellan permit Virginia courts to order a servicemember to "indemnify" or "reimburse" an ex-spouse for a waiver (or reduction) of retirement pay – they are overruled. Virginia courts should not issue orders that require or permit servicemembers to make contracts, "guarantees," or "indemnification" promises to former spouses in contravention of Howell.

While we find that federal law preempts state law on these questions of military retirement divisibility, husband's ability to overturn the challenged orders at this late juncture hinges on whether the orders are void *ab initio* or merely voidable under Virginia law.[8]

---

[8] Notably, an unappealed judgment of divorce dividing military pension benefits can be upheld under state law finality and preclusion principles, even if the judgment may have been wrong under federal law or rested on a subsequently overruled legal principle. Whether such an error is subject to *res judicata* or finality rules such as Rule 1:1 is generally a question of state law that does not raise a federal question. See 2 Brett R. Turner, Equitable Distribution of Property § 6:6, at 54-55 (4th ed.); Mansell, 490 U.S. at 586 n.5 (stating that the underlying state court decision in Mansell was not based on *res judicata* or finality issues – but if it had been, no federal question would have been raised); see also In re Marriage of Mansell, 217 Cal. App. 3d 219, 234-45 (1989) (on remand from Supreme Court, finding that *res judicata* barred husband's motion to modify the divorce decree).

## 2. There are Several Circumstances Under Which an Order Can Be Deemed Void *ab initio.*

Husband contends that the orders are so much at odds with federal law that they must be deemed void *ab initio* and, thus, can be attacked at any time without regard to Rule 1:1's twenty-one-day window. "An order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court could 'not lawfully adopt.'" Singh v. Mooney, 261 Va. 48, 51-52 (2001).[9] Under Virginia law an order that is void *ab initio* may be attacked beyond twenty-one-days from judgment by a party to the proceeding in which the putative judgment was entered. Bonanno, 299 Va. at 736-38. By contrast, an order is voidable if the trial court merely made reversible error in its creation. Singh, 261 Va. at 51-52. If found voidable, such an order may only be set aside consistent within the framework of Rule 1:1 and proper appellate proceedings. Id.[10]

Here, the circuit court had subject matter jurisdiction to issue the challenged orders – even if it reached an erroneous conclusion. However, in examining whether the orders are void, Virginia law looks beyond jurisdiction and also directs that an order is void if the circuit court was without power to render the order. Id. It is this mandate of Virginia law that requires us to strike down the orders at issue.

---

[9] Here, there is no evidence in the record (or any argument on appeal) that the circuit court employed a "mode of procedure" it was not permitted to adopt.

[10] Husband, of course, was a party to the original proceeding here. Thus, he is permitted to challenge the order as void *ab initio* beyond twenty-one days from judgment. Bonanno, 299 Va. at 736-38; Collins v. Shepherd, 274 Va. 390, 395, 402-03 (2007) (Rule 1:1 does not bar a party from filing a motion to vacate a judgment more than twenty-one days after its entry when the challenged judgment is void *ab initio*.). In Bonanno, the Supreme Court rejected language appearing in various Virginia opinions stating that an order that is void *ab initio* may be attacked "by any persons, anywhere, at any time, or in any manner." Bonanno restricted the ability of strangers to a proceeding to collaterally attack void orders beyond twenty-one days. 299 Va. at 730-32, 736-38. That limitation, however, is not applicable here.

a.  While the Circuit Court had Subject Matter Jurisdiction to Rule on the Divisibility of Military Benefits, the Court Did Not Have the Power to Enter these Indemnification Orders, Rendering them Void *ab initio.*

A "challenge to an order based on a trial court's misapplication of a statute generally raises a question of court error, not a question of the court's jurisdiction."  Hicks v. Mellis, 275 Va. 213, 219 (2008).  Even when dealing with federal preemption:

> The preemption doctrine does not deprive state courts of subject matter jurisdiction over claims involving federal preemption unless Congress has given exclusive jurisdiction to a federal forum.

21 C.J.S. Courts § 272; see Foster, 949 N.W.2d at 117-21 (Viviano, J. concurring).  Congress has not given exclusive jurisdiction to a federal forum with respect to division of military benefits.[11]

However, the Supreme Court of Virginia has recognized that defects in jurisdiction are *not* the only means by which an order may be void:

> [I]t is essential to the validity of a judgment or decree that the court rendering it shall have jurisdiction of both the subject-matter and parties. *But this is not all*; for both of these essentials may exist, and still the judgment or decree may be void, because [1] *the character of the judgment was not such as the court had the power to render . . . .*

Anthony v. Kasey, 83 Va. 338, 340 (1887) (emphasis added); see Singh, 261 Va. at 51-52;

Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73 (1998).

---

[11] In his treatise Turner explains:  "McCarty and Mansell state a rule of substantive federal law, and not a rule of subject matter jurisdiction."  Turner, § 6:6, at 54-55.  He also discusses the importance of Sheldon v. Sheldon, 456 U.S. 941 (1982), for the proposition that errors in divisibility of military pensions do not divest state courts of subject matter jurisdiction.  Turner, § 6:6, at 49.  In Sheldon, one of the issues presented on certiorari was whether federal preemption of state law regarding division of military retirement pay rendered state judgments in that area void for lack of subject matter jurisdiction.  Id.  The United States Supreme Court dismissed the appeal "for want of a substantial federal question," which carried the same precedential value as a full opinion.  See id.; Hicks v. Miranda, 422 U.S. 332, 344 (1975).  The outcome in Sheldon, thus, further confirms that "decisions which erroneously divide preempted benefits *are not void for lack of subject matter jurisdiction*."  Turner, § 6:6, at 49 (emphasis in original); see Foster, 949 N.W.2d at 123-24 (Viviano, J., concurring).

The "power to render" inquiry requires that Virginia courts must act within the scope of their derived power. Virginia state courts derive their power from Virginia's Constitution, the General Assembly, and grants of power from the federal government. See Va. Const. art. III, § 14; Evans, 255 Va. at 74 (finding the state court did not have the power to allow a statutorily formed commission to relinquish the power granted to it by the General Assembly); Mansell, 490 U.S. at 589-95 (explaining that the USFSPA granted state courts limited power to divide military benefits in divorce).

When a state's action conflicts with federal action in an area within the federal government's power, the state's action "must give way." PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011); see also Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute."). This notion is embodied in the Federal Constitution's Supremacy Clause. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States . . . shall be the supreme law of the land; and the judges in every state will be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."). Just as a state court's action is void if it exceeds the power conferred by Virginia statutes, so too is a state court's action void if it exceeds the limits imposed on it by the federal government because it "transcend[s] the power conferred by law." See Windsor v. McVeigh, 93 U.S. 274, 282 (1876), cited with approval by Kasey, 83 Va. at 340.

Mansell explained that the USFSPA "granted [state courts] the authority to treat disposable retired pay as community property" in divorce proceedings. Mansell, 490 U.S. at 589. But it noted that this grant of power was "precise and limited" in that it did not include the authority to divide any portion of a veteran's retirement pay that was "waived in order to receive veterans' disability payments." Id. (citing 10 U.S.C. § 1408(a)(4)(B)). A gray area quickly developed by which courts sometimes ordered servicemembers to "indemnify" and "guarantee"

- 15 -

around the prohibition in Mansell that disability pay could not go to the servicemember's spouse in divorce.

The reasoning in Howell closed this "loophole" and established that it was not within a state court's power to require a servicemember to "reimburse" or "indemnify" a spouse for retirement pay waived (or diminished) to receive veteran's disability payments. Howell pronounced that such court-ordered attempts to maneuver around Mansell were preempted and forbidden by federal law. The USFSPA and case law from the United States Supreme Court interpreting the statute have granted state courts the power to divide a veteran's military pay in divorce proceedings, with several key limitations: (1) a state court cannot order that a former spouse receive any amount beyond 50% of the veteran's disposable retirement pay (10 U.S.C. §§ 1408(c)(1), (e)(1)), and (2) a state court cannot order a veteran to indemnify a former spouse for any loss caused by a veteran's acceptance of disability pay which reduces retirement pay. Howell, 137 S. Ct. at 1406.

In this case, the circuit court's orders were issued more than three years *after* Howell.[12] The final decree and equitable distribution order and military pension division order require husband to indemnify and guarantee payment of a sum certain derived from military retirement pay. The net result of this impermissible indemnification is that, after DFAS' allocation of benefits, husband is required to pay 140% of his retirement benefits to his former spouse. This outcome is flatly

_____

[12] Prior to Howell, the Supreme Court of the United States had not addressed whether a court could require a spouse to reimburse or indemnify a former spouse for any reductions in disposable retirement pay as a result of electing to receive disability pay. Working within this gray area, divorcing parties and their attorneys sometimes agreed to terms requiring reimbursement or indemnification in separation agreements, and courts working within this gray area ordered the same. See Smith v. McLaughlin, 289 Va. 241, 253-54 (2015) (an attorney is not liable for failing to correctly predict the outcome of an unsettled legal issue as long as he acted reasonably within the existing legal framework). However, after the 2017 Howell opinion, it became apparent that state courts could not order "reimbursements" such as occurred here. Post-Howell indemnity and reimbursement military pension division orders must be deemed outside the court's power and void *ab initio*.

prohibited under Howell and the character of the circuit court judgment was such that the court "had no power to render it." Singh, 261 Va. at 51-52. Accordingly, the orders are void *ab initio* for lack of power – and because they are void *ab initio*, wife's reliance on Rule 1:1 and *res judicata* is of no help to her. Id. at 52 ("Rule 1:1 . . . does not apply to an order which is void *ab initio*."); Carrithers v. Harrah, 63 Va. App. 641, 649 (2014) ("Res judicata . . . does not protect a truly void order from scrutiny.").

### b. The Remedy

The issue left before us is whether the final decree and equitable distribution order, and pension division order, can remain intact while we simply excise the void paragraphs, or whether the decree is void such that it requires recalculation of various related rulings. There is a split of reasoning among Virginia cases on how to remedy this situation.

In the context of divorce proceedings, on several occasions the Supreme Court of Virginia has modified only the void provisions in a decree while leaving the decree otherwise undisturbed. In Lapidus v. Lapidus, 226 Va. 575, 579-81 (1984), the trial court ordered the husband to contract for life insurance as part of a divorce decree. Id. at 579. The Supreme Court ruled that the trial court did not have the power to compel the husband to contract for life insurance and found "that provision in the decree is void." Id. It modified the trial court's decree by removing the provision requiring husband to contract for life insurance, and affirmed the decree as modified. Id. at 581. Similarly, in Watkins v. Watkins, 220 Va. 1051, 1055 (1980), the Court held that the trial court "lacked the statutory power to lawfully adopt [a] remedy" enjoining husband from disposing of shares of stock. ("Consequently, the foregoing paragraph of the final decree will be adjudged void, and to that extent only the judgment of the trial court will be reversed."). In Ring v. Ring, 185 Va. 269, 277 (1946), the Court held that the trial court lacked the power to impound a husband's stock as security for payment of spousal support to his ex-wife and excised that term from the agreement.

Notably, the disputes arising in these domestic cases pre-date enactment of Virginia's equitable distribution statute. Code § 20-107.3.

More recently, however, this Court has examined cases in which equitable distribution awards were flawed and required that interrelated aspects of the judgments be reconsidered. For example, in Johnson v. Johnson, 25 Va. App. 368, 373 (1997), the equitable distribution order erroneously awarded each party their respective retirement accounts, when the evidence showed that the wife did not have a retirement account. Id. The parties did not present credible evidence of the value of husband's retirement account, and this Court provided instruction for the lower court in determining the value of the account. Id. at 373-75. We concluded "[b]ecause the equitable distribution award must be redetermined, the spousal support must also be redetermined." Id. at 375. See also Robinette v. Robinette, 4 Va. App. 123, 130-31 (1987) (where disposition of marital property is to be reconsidered on remand, the court must necessarily reexamine support); Mitchell v. Mitchell, 4 Va. App. 113, 121 (1987) (same).

This reasoning is reflected in the Code of Virginia, which instructs courts to consider the division of marital property when determining spousal support and child support. See Code § 20-107.1 (spousal support); Code § 20-108.1 (child support). The equitable distribution and military pay award necessarily influenced the award of spousal support and child support between husband and wife. We decline to merely excise the offending indemnification clause and payment guarantee of $1,202.70 per month, as this would result in almost a $1,000 per month shortfall to wife that was never intended by either the parties or the circuit court. Because support levels, tax credit issues, and related fee questions decided below were tied to the equitable distribution award, we remand the equitable distribution and related determinations to the circuit court so that it can set the marital share of the military pension and perform any

necessary balancing of relevant factors to establish appropriate spousal support and child support levels.

### D. Wife's Request for Attorney's Fees is Denied.

Wife seeks an award of appellate attorney's fees. On appeal, this Court may award all or part of the fees requested. Rule 5A:30(b)(1)-(2). "The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "In determining whether to make such an award, [this Court] shall not be limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but shall consider all the equities of the case." Rule 5A:30(b)(3).

This was a complex appeal, and each party raised legitimate arguments. Husband's position carried substantial merit, and he has prevailed. A thorough review of the record on appeal provides no equitable basis to require husband to pay wife's fees. Each party shall bear its own fees.

### IV. CONCLUSION

The circuit court erred in denying husband's motion for modification. We reverse the circuit court's ruling and remand the case for review of the final decree and equitable distribution order and pension division order consistent with this opinion.

Reversed and remanded.